## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RSB SPINE, LLC,

        Plaintiff,

    v.

DEPUY SYNTHES SALES, INC., and
DEPUY SYNTHES PRODUCTS, INC.,

        Defendants.

**REDACTED PUBLIC VERSION**

Civil Action No. 19-1515-RGA

Judge Richard G. Andrews

## DEFENDANTS' OPENING MEMORANDUM IN SUPPORT OF THEIR
## MOTION FOR PARTIAL SUMMARY JUDGMENT

*Of Counsel:*

Calvin P. Griffith
Patrick J. Norton
Kenneth S. Luchesi
T. Kaitlin Crowder
**JONES DAY**
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
(216) 586-3939

Dated: June 23, 2022

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@asbygeddes.com

*Attorneys for Defendants*

{01813172;v1 }

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................- 1 -

II.    BACKGROUND ...................................................................................................- 2 -

    A.    The Technology At Issue ..........................................................................- 2 -

    B.    Dr. Bray And The Asserted Patents ..........................................................- 4 -

        1.    The ' 234 Patent .............................................................................- 4 -

        2.    The '537 Patent .............................................................................- 5 -

        3.    RSB's Continuation Application ....................................................- 7 -

    C.    The Litigation ...........................................................................................- 8 -

        1.    RSB Accused A Unitary Metal Ring Of Having A Base Plate .............- 8 -

        2.    The IPRs ........................................................................................- 8 -

            a.    Base Plate .........................................................................- 9 -

            b.    Lip Osteophytes ..............................................................- 9 -

        3.    This Court's Claim Construction ....................................................- 12 -

III.    LEGAL STANDARD ..........................................................................................- 12 -

    A.    Summary Judgment ..................................................................................- 12 -

    B.    The Law Of Infringement And Anticipation ...........................................- 13 -

IV.    THE ASSERTED '234 CLAIMS ARE INVALID ............................................- 13 -

    A.    The Asserted '234 Claims ........................................................................- 13 -

    B.    Michelson 376 Anticipates The Asserted '234 Claims ............................- 14 -

    C.    The Arguments Of RSB And Its Expert Are Contrary To The Court's
        Construction And Fail To Establish A Genuine Issue Of Material Fact .........- 16 -

V.    THE ACCUSED PRODUCTS DO NOT INFRINGE ANY OF THE ASSERTED
    '537 CLAIMS BECAUSE THEY DO NOT INCLUDE A BASE PLATE FOR
    POSITIONING PRIMARILY BETWEEN ANTERIOR PORTIONS OF LIP
    OSTEOPHYTES ...................................................................................................- 21 -

    A.    The Court's Construction Of "Lip Osteophyte" ......................................- 21 -

    B.    The Meaning Of "Fit[ting] Primarily Between Anterior Portions Of
        Adjacent Vertebral Bones' Lip Osteophytes" .........................................- 22 -

    C.    DePuy's Accused Products Are Not Positioned Between Lip Osteophytes ....- 25 -

    D.    RSB's Counter-Arguments Ignore The Court's "Outgrowth" Requirement,
        The "Lip" Location, And The "Fit Primarily" Requirement ...........................- 26 -

**TABLE OF CONTENTS**
**(continued)**

Page

|  | 1. | Dr. Hynes's "Anterior Portions Of Lip Osteophytes" Encompass The Entire Anterior Portion Of The Vertebra | - 26 - |
|  | 2. | Neither RSB Nor Dr. Hynes Performed A Proper "Fit Primarily" Analysis | - 28 - |
| VI. | CONCLUSION | | - 30 - |

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*,
    808 F.3d 1313 (Fed. Cir. 2015) ................................................................13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................12

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*,
    731 F.2d 831 (Fed. Cir. 1984) ................................................................12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................12

*Desper Prods., Inc. v. QSound Labs, Inc.*,
    157 F.3d 1325 (Fed. Cir. 1998) ................................................................13

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014) ................................................................................27

*RSB Spine, LLC v. Xtant Medical Holdings, Inc.*,
    C.A. No. 18-1976-RGA, D.I. 1 ................................................................19

*Schering Corp. v. Geneva Pharms.*,
    339 F.3d 1373 (Fed. Cir. 2003) ................................................................13

*Southwall Techs., Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995) ................................................................13

*White v. Dunbar*,
    119 U.S. 47 (1886) ................................................................................27

OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) ................................................................................12

**Table of Abbreviations**

| Term | Abbreviation |
|---|---|
| RSB Spine, LLC | RSB or Plaintiff |
| DePuy Synthes Sales, Inc. and DePuy Synthes Products, Inc., | DePuy or Defendants |
| U.S. Patent No. 6,984,234 | the '234 patent |
| U.S. Patent No. 9,713,537 | the '537 patent |
| March 21, 2022 Opening Expert Report of Dr. Richard A. Hynes | Hynes Opening Report |
| May 9, 2022 Reply Expert Report of Dr. Richard Hynes | Hynes Reply Report |
| Defendants' Zero-P, Zero-P VA, SynFix LR and SynFix Evolution products | DePuy's Accused Products |
| Claims 9 and 12 of the '234 patent | Asserted '234 Claims |
| Claims 10, 12, 14, 24, 26 and 30 of the '537 patent | Asserted '537 Claims |
| Asserted '234 Claims  and Asserted '537 Claims | Asserted Claims |
| May 24, 2022 deposition transcript of Dr. Richard A. Hynes | Hynes tr. |
| February 11, 2022 deposition transcript of Dr. Robert S. Bray | Bray tr. |
| United States Patent Publication No. 2002/0099376 to Michelson | Michelson 376 |
| April 18, 2022 Expert Report of Troy D. Drewry In Response To Dr. Cheng's Report On Invalidity Of U.S. Patent Nos. 6,984,234 And 9,713,537 | Drewry Report II |
| U.S. Patent No. 6,432,106 to Fraser et al. | Fraser 106 |
| June 8, 2022 deposition transcript of Troy Drewry | Drewry tr. |
| February 15, 2022 deposition transcript of Dr. Donald Hales | Hales tr. |
| June 22 Declaration of Dr. Christopher Cain | Cain Decl. |
| February 11, 2022 Deposition transcript of Dr. Christopher Cain | Cain tr. |
| March 21, 2022 First Expert Report of Boyle C. Cheng, PhD | Cheng Report |

## I.      INTRODUCTION

The Court should enter summary judgment that (1) the Asserted '234 Claims are invalid as anticipated by Michelson 376, and (2) DePuy's Accused Products do not infringe the Asserted '537 Claims.

***First***, the only limitation of the Asserted '234 Claims that RSB contends is not disclosed by Michelson 376 is the "base plate" limitation. Neither RSB nor its experts have identified any other claim limitations supposedly missing from Michelson 376, and there are none. RSB contends that Michelson 376 does not disclose a base plate because the fixation portion of Michelson 376 is integral with (and, in this regard, not distinct from) a spacer. This issue is one of claim construction, and it has already been resolved against RSB. The Court expressly ruled that a "base plate" need not be distinct from a spacer, and it should grant summary judgment that the Asserted '234 Claims are invalid.

***Second***, each Asserted '537 Claim requires that the base plate is configured to fit primarily between anterior portions of "lip osteophytes." DePuy's Accused Products are not positioned between any osteophytes. Rather, DePuy's Accused Products have a plate portion that is intended to fit in an anterior portion of the intervertebral space not comprised of osteophytes. No evidence supports that any surgeon has ever placed an Accused Product primarily between osteophytes. The arguments that RSB and its expert have made in opposition are either contrary to the Court's construction of "lip osteophyte," or are insufficient as a matter of law. Summary judgment of noninfringement of the '537 patent should be granted in favor of DePuy.

Resolution of this motion in DePuy's favor will dispose of RSB's claims against DePuy.

## II.      BACKGROUND

### A.      The Technology At Issue

This case involves spinal implant devices.  The patents-in-suit and DePuy's Accused Products all relate to a class of devices commonly referred to as stand-alone intervertebral body devices.  Products of this type are placed between adjacent vertebrae to facilitate fusion.  They can be used to restore the disc space between vertebrae and reduce pain caused by pressure due to a damaged disc.

Before standalone intervertebral body devices, surgeons often used plates secured over vertebrae to hold the vertebrae in place while bone graft material placed between the vertebrae fused the vertebrae together over a period of months.  Below is an example of a plate used in the anterior cervical area (behind the esophagus in the throat).



Traditional plate devices of this type were (and continue to be) commonly used with a separate "cage" containing the bone graft material between the vertebrae.  A plate was secured to the vertebrae using screws, and a cage added physical support between the vertebrae and helped confine the bone graft material.  These devices could be used independently; that is, a plate could be used with or without a cage, and a cage could be used with or without a plate.

Some surgeons became interested in plate/cage combination devices as an alternative.  One plate/cage combination device was developed by Gary Michelson.  An example of a Michelson plate/cage combination design is described in Michelson 376.  Michelson 376 was a unitary device (depicted below).  The trailing wall (104, in blue) had holes for screws to be inserted to secure the device to vertebrae.  It also included an enclosed loop-like cage for bone graft.



(Ex. 1.)[1]  The entire device was then inserted between adjacent vertebrae, as illustrated below.



---

[1] Exhibits referenced herein are attached to the Declaration of Kenneth S. Luchesi, filed concurrently herewith.

Christopher Cain, another spine surgeon, had a similar idea for a plate/cage combination device. Cain worked with DePuy (*i.e.*, Synthes, prior to its acquisition by DePuy) to develop a device with a plate mounted to a cage. Like Michelson 376, the device was inserted within the disc space (*i.e.*, intervertebrally), but allowed the use of different materials for portions of the device. The fixation portion was made from titanium and provided fixation with screws (which screwed into vertebrae above and below the device), and the cage portion was made from PEEK, a radiolucent plastic material. The device is illustrated in DePuy's '207 patent, Figure 7 of which is shown below (with the fixation plate colored blue and the PEEK cage colored pink).



(Ex. 2, Fig. 7.)

### B.    Dr. Bray And The Asserted Patents

#### 1.    The '234 Patent

Later, Robert Bray of RSB filed the patent application that led to the '234 patent. Bray described a "base plate" that was placed into the intervertebral space. The Asserted '234 Claims require only that the base plate be inserted at least partly between vertebrae. They do not specify where, in the intervertebral space, the base plate is placed, and do not require placement between

osteophytes.  (Ex. 4.)  The patent describes using the "base plate" with a block of allograft bone.

Figures 1 and 2 are reproduced below (allograft bone shown in yellow, base plate in blue).



RSB sold a device called InterPlate as an embodiment of the '234 patent.  An image of the original

InterPlate device is depicted below.



(Ex. 5, RSB0105913.)

### 2.      The '537 Patent

RSB subsequently filed multiple continuation-in-part applications that added new

embodiments.  The application for the '537 patent was filed in 2017—nearly 14 years after the

application for the '234 patent.  The claims of the '537 patent, unlike those in the '234 patent, all

require the base plate to be positioned in a specific location—primarily between anterior portions

of lip osteophytes (and not just in the intervertebral space).  Figure 32 depicts a new one-piece

embodiment, while Figure 35 depicts a new two-piece embodiment.  Both are shown below.



(Ex. 6, Figs. 32, 35.)

RSB sold a version of a Figure 32-style InterPlate device, called InterPlate C-P.   An image

of the InterPlate C-P device is depicted below.



(Ex. 5, RSB0105913.)  RSB marked the InterPlate C-P labels with the '234 patent number (Ex.

20, RSB0115020), thus representing to the public that it was covered by the patent.  In marketing

materials, RSB listed the key features of the design, including that its "[c]ombined fixation plate

and spacer saves time with one step implantation."  (Ex. 7, RSB0130514.)

### 3.   RSB's Continuation Application

In the prosecution of a continuation of the '537 patent (U.S. Patent App. No. 15/723,522), the Examiner found that trailing wall 104 in Michelson 376 (shown below, in blue) is a base plate.



(Ex. 8, 3 ("Michelson [376] discloses . . . a base plate (#104, which is attached to u-shaped member #102).").)  The Examiner also found that, in a similar Michelson device, the trailing wall 404 (depicted below, in blue) is a base plate.



(*Id*., 6 ("Michelson [668] discloses . . . a base plate (#404, Fig. 21-25, where base plate #404 is a flat plate for implant #400").)  The Examiner maintained these positions again on May 7, 2021. (Ex. 9, 5, 9.)  RSB then expressly abandoned the application.  (Ex. 10.)

### C.       The Litigation

#### 1.       RSB Accused A Unitary Metal Ring Of Having A Base Plate

In 2018, RSB filed patent infringement lawsuits against five different companies alleging infringement of the '234 and 537 patents.  Nine months later, RSB sued DePuy.  (C.A. No. 19-cv-01515-RGA, D.I. 1.)  Several defendants settled with RSB, including a company called Xtant.  The settlement agreement with Xtant defines its accused products as items that would infringe but for the license, and Xtant paid almost ▮▮▮▮ to RSB to settle.  Xtant's accused products, like the Michelson 376 design discussed above, included a metal ring into which the screws were inserted in one wall.  It also included a PEEK component on the metal ring.  RSB asserted that the portion of the ring that receives screws (the anterior wall) is a base plate.  (Ex. 11, Case No. 1:18-cv-01976-RGA, D.I. 1-1 at 7.).  An image of an accused Xtant device is depicted below.



(Ex. 12.)

#### 2.       The IPRs

Prior to claim construction in this case, several defendants—not including DePuy—filed petitions seeking IPR of both Asserted Patents.  Over DePuy's objection, this litigation was stayed pending the IPRs.  (D.I. 67.)  Ultimately, the PTAB found that the Asserted Claims had not been proven to be unpatentable in view of the arguments presented.  (Ex. 13; Ex. 14.)  There was

considerable argument and discussion relating to the terms "base plate" and "lip osteophyte" during the IPRs.

### a.      Base Plate

With respect to the '234 patent, the PTAB considered a Michelson patent similar to Michelson 376—specifically item 400 (the entire implant) depicted below.



The petitioners asserted that the entirety of the Michelson implant 400 was a "base plate." The PTAB found that the entire "implant 400" was not proven to be "considered… a 'base plate.'" (Ex. 14, 33-34.) The PTAB expressly noted it was not deciding whether trailing wall 404 was a base plate, because the petitioners had not raised that issue in their petition. (*Id*. at 27 n.16, 32 n.17.)

### b.      Lip Osteophytes

In the IPR for the '537 patent, the PTAB considered the "lip osteophyte" limitation in connection with the Fraser 106 patent. RSB (and its expert, Drewry) argued that the Fraser plate did not satisfy the claim requirement of positioning primarily between "lip osteophytes." RSB explained to the PTAB the approximate location where "lip osteophytes" may grow, *i.e.*, at the lip (or edge) around the endplate of a vertebra. In a view looking down on the vertebral body from above, RSB illustrated this location using a blue dotted line.



(Ex. 15 at 34.) RSB explained that the endplate is divided equally between anterior and posterior portions, and that, in order to "fit primarily between anterior portions of adjacent bones' lip osteophytes," a majority of the area of an alleged base plate must be located in this anterior lip region.



(*Id*., 35.)  RSB further explained that none of the interior of the vertebral end plate is part of the lip; the lip is only the outer edge:



(*Id*., 36.)  RSB argued that, to be positioned primarily between anterior portions of lip osteophytes, more than 50% of the area of the alleged base plate must be located there; RSB excluded any portion of the device on the interior portion of the endplate as well as any portion that extended into the posterior half of the endplate.  As RSB illustrated (reproduced below), only the portions of the Fraser device colored in orange (at most) sat between the anterior lip osteophytes, while portions colored in red did not.



(*Id*., 36-37)  The PTAB relied on RSB's argument, and found that the Fraser base plate did not fit primarily between lip osteophytes, because more than 50% of the area of the alleged base plate was not on the anterior lip.  (Ex. 13 at 29-34.)  On this basis, the Asserted '537 Claims were confirmed as patentable.

### 3. This Court's Claim Construction

Following the IPRs, the parties submitted amended claim construction briefing, and this Court construed the claims. This Court construed "base plate" as: "a fixation plate to stabilize adjacent vertebrae for fusion." (D.I. 123 at 6.) The Court rejected RSB's request to require that a base plate be distinct (*i.e.*, a separate piece) from a spacer. (*Id.*, 8.) Likewise, the Court rejected DePuy's alternative request to require that the base plate be used without a separate cage (or spacer). (*Id.*, 8-9.) Thus, a base may be used with, connected to, or monolithically part of a spacer (or cage).

The Court construed "lip osteophyte" to mean: "bony outgrowth at the lip." (D.I. 123 at 9.) RSB had argued that the term should not be limited to outgrowths, but rather, should be construed to mean "the strongest part of the bone," or (later) "hard, ossified" bone. (D.I. 98 at 29-31; D.I. 106 at 1.) The Court rejected RSB's proposal in part because it was indefinite. (D.I. 123 at 10.)

## III. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it will affect the outcome of a lawsuit, and a dispute over a material fact is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party fails to present a genuine issue of material fact, the Court must grant summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "Mere denials or conclusory statements are insufficient" to survive summary judgment. *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984). "Summary judgment is as appropriate in a patent case as it is in any other

case." *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998) (citation omitted).

### B.    The Law Of Infringement And Anticipation

To establish literal infringement, the patentee must prove that every limitation set forth in a claim is found in an accused product; the absence of a single element precludes a finding of infringement. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).  If less than every element exists in the accused device, then the patentee's claim of infringement is legally insufficient and the accused infringer is entitled to summary judgment. *See Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1317 (Fed. Cir. 2015).

That which infringes, if later, anticipates, if earlier. *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1379 (Fed. Cir. 2003).  A prior art reference anticipates a patent claim if it discloses, explicitly or inherently, each and every limitation of the claim. *Id.* at 1377.

## IV.    THE ASSERTED '234 CLAIMS ARE INVALID

### A.    The Asserted '234 Claims

RSB asserts only claims 9 and 12 of the '234 patent against DePuy.  They are both method claims and are dependent on claim 1, which provides:

> 1.  A method for joining first and second bones having top surfaces and side surfaces generally facing each other, the method comprising:
>
> inserting between the side surfaces of the bones a base plate having a first end nearer the first bone and a second end nearer the second bone, wherein the base plate has a first screw hole extending through the first end and a second screw hole extending through the second end;
>
> introducing a first bone screw through the first screw hole and into the first bone, wherein the first bone screw is introduced at an angle relative to the top surface of the bone ranging from about 20° to about 60°,
>
> introducing a second bone screw through the second screw hole and into the second bone, wherein the second bone screw is introduced at an angle relative to the top surface of the bone ranging from about 20° to about 70°, and

covering at least a part of the first bone screw and at least a part of the second bone screw to prevent the first and second bone screws from backing out of the first and second bones, respectively.

(Ex. 4, '234 patent at 8:62-9:16.)  Dependent claims 9 and 12 add requirements that the first screw is angled between about 40° and 50° (claim 9), or that the bone screws are permitted to toggle (claim 12).  (*Id.*, 9:44-46; 9:53-55.)

### B.    Michelson 376 Anticipates The Asserted '234 Claims

Michelson 376 meets all of the limitations of claims 9 and 12 of the '234 patent.  (Ex. 30, Cheng Report at ¶¶71-91.)  As noted above, this Court construed "base plate" as: "a fixation plate to stabilize adjacent vertebrae for fusion."  (D.I. 123 at 6.)  The Court rejected RSB's argument that a base plate must be distinct (separate) from a spacer.  (*Id.*, 8.)  Trailing end 104 is a base plate, as the Examiner found in prosecution.  It has a first end and a second end, as shown below.





A first bone screw is introduced through a first screw hole, and a second bone screw is introduced through a second screw hole.  The angles of insertion include 40° to 50° relative to the top surface of the vertebrae.  (Ex. 1, claim 14; *see also* [0071].)  The bone screw heads can be rounded and, therefore, may toggle.  (*Id*., [0047].)

In an interrogatory, DePuy asked RSB to identify all elements in the Asserted '234 Claims that it contends are absent from Michelson 376.  (Ex. 17 at 11.)  Through its expert, RSB identified only one:  that the implant of Michelson 376 allegedly lacks a base plate.  (Ex. 18, Drewry Report II at ¶¶69-102.)  No other claim elements were identified as not being present in Michelson 376.

RSB's expert (Drewry) admits that trailing end 104 has two opposed surfaces (122 and 124) connected by a relatively thinner surface.  (Ex. 19, Drewry tr. at 118:13-16; 127:21-128:16.)  Thus, it meets Drewry's own definition of a plate, except that it is not separate from a spacer.  The Court, however, has rejected that requirement for a base plate.

Additional intrinsic evidence further establishes that a base plate may be one side of, and integral with, a spacer.  In the prosecution of a continuation of the '537 patent, the Examiner

analyzed the Michelson 376 implant and found that trailing end 104 (colored in blue below) of the implant constitutes a base plate.



(Ex. 8 at 3.)  The Examiner never withdrew this position, and RSB eventually abandoned the application in October 2021, after unsuccessfully attempting to distinguish over Michelson 376 by amendments to the claims.  (Ex. 9 at 5; Ex. 10.)

### C. The Arguments Of RSB And Its Expert Are Contrary To The Court's Construction And Fail To Establish A Genuine Issue Of Material Fact

If the Court determines that Michelson 376 discloses a "base plate"—and it does—then Michelson 376 anticipates the Asserted '234 claims.  There is no dispute about the structure of Michelson 376; RSB's only argument is one of claim construction.  Over and over again, RSB and Drewry contend that trailing end 104 in Michelson 376 is not a base plate because it is not "distinct" from a spacer.  (*E.g.*, Ex. 18, ¶¶72-74 (repeatedly arguing that a plate must be "distinct" or "separate" from other structures and not "monolithic" with other structures; *see also*, *id.*, ¶73 n. 115.))  They deny that this Court found that a "base plate" need not be distinct from a spacer.

The Court's opinion focused on the material of the "base plate," stating that the fact that the "base plate" could be comprised of bone graft necessitated rejection of RSB's "distinct" proposal.  Judge Andrews made no comment about whether a base plate could be represented by some undefined portion of a unitary spinal implant, like an intervertebral cage.  Instead, he said there was "scant *intrinsic* evidence" to include RSB's "distinct" requirement for "base plate."  **His opinion**

> **is silent on a POSITA's understanding of whether plates are distinct components or structures**, and whether a POSITA would have considered an indistinguishable, contiguous portion of a unitary implant to be a base plate, let alone a plate.

(*Id.*, ¶100 (emphasis added).)  This contention is hard to fathom, and cannot be reconciled with the Court's ruling on this issue:

> **Plaintiff's arguments that the base plate must be distinct from a spacer are not very strong.**  The '234 patent describes a "bone graft" as separate from the base plate but does not use the term "spacer."  (4:16-22; 6:47-50).  Plaintiff suggests that a person of skill in the art (a "POSA") would understand the bone graft to be a spacer, but Plaintiff suggested in oral argument that the base plate could, in some situations, itself be a bone graft.  (D.I. 109 at 15:11-17; *see also* D.I. 102 at 18 ("The Patent Office has also found that a structure made of bone graft is a base plate[.]").  **Thus, there is scant intrinsic evidence for Plaintiff's proposition that a POSA would understand the bone plate necessarily to be distinct from a spacer and bone graft.  I therefore reject Plaintiff's proposed claim construction.**

(D.I. 123 at 8 (emphasis added).)

The issue of whether a "base plate" must be "distinct" from a spacer—*i.e.*, whether it necessarily had to be a separate component or could also be part of a monolithic structure—was central to the claim construction dispute.  The entire point of presenting this issue to the Court was to determine whether a part of a monolithic spacer, like Michelson 376, could be deemed a base plate.  RSB and Drewry argued extensively that a base plate **must** be distinct (separate) from a spacer, and may **not** be monolithic with it.  (D.I. 98 at 12-14.)  At the *Markman* hearing, the Court pressed RSB's counsel on the meaning of "distinct," and RSB made its position clear:  "The base plate would be physically distinct or physically distinguishable from a spacer.  So when we say distinct, we mean physically distinguishable as a separate component."  (D.I. 105, 27:18-21.)  The Court rejected RSB's request to add a "distinct-ness" requirement to the construction.[2]

---

[2] The PTAB reached the same conclusion in the IPRs.  (Ex. 14 at 21 ("we do not include a requirement that a 'base plate' is distinct from a spacer").)

The Court was correct in determining that RSB's argument that a base plate cannot be part of a monolithic device was "not very strong."   Indeed, RSB marked the labels for its own monolithic cage/plate device (shown below, at right) with the '234 patent number.   (Ex. 20, RSB0115020; Ex. 7 at 1-2.)  That device is just like the embodiment of Figure 32 from the patent (shown below on the left, without cover plate).

 

RSB even called the InterPlate C-P a "plate" in product literature, specifically referring to it as a "[c]ombined fixation plate and spacer."  (Ex. 7, RSB0130514.)  And RSB told the FDA that the "Part Type" for this product ("InterPlate PEEK Cervical") was "Plate."  (Ex. 20, RSB0115009)  If that device lacked a base plate, it could not have been marked with the '234 patent number.

Similarly, one of RSB's experts, Hynes, also recognized that a portion of a monolithic interbody device can be considered a plate.  Indeed, Hynes is a named inventor on a patent for an interbody device much like those at issue here.  Figure 1 from his patent is depicted below.



*FIG. 1*

(Ex. 21, Fig. 1 (4:15-19), annotated.)  The patent describes item 80 (colored in blue above) as follows:  "A plate 80 may be formed on a lateral side of the implant 10.  The plate 80 may be a separate piece that is attached to the implant, or it may be integrally formed with the body (*i.e.*, the body plate 80 includes a unitary construction)."  Thus, Hynes and his co-inventors acknowledged that a plate may be unitary with a spacer.[3]

Even after initiating litigation, RSB agreed that a base plate can be a part of a monolithic ring structure.  RSB sued Xtant, alleging that its "Irix" implants infringe both the '234 and '537 patents.  *RSB Spine, LLC v. Xtant Medical Holdings, Inc.*, C.A. No. 18-1976-RGA, D.I. 1.  The alleged base plate in the Irix products is a portion of a ring:

---

[3] Notably, Hynes's design was commercialized by Medtronic as a product called PEEK Prevail, and the surgical technique manual includes the notation "Michelson Technology At Work" on the front cover.  (Ex. 22.)  Hynes refers to this monolithic device as a "plate-cage interbody device" that is "similar" to the Accused Products.  (Ex. 16, 57:12-18; Ex. 27, ¶160.)



(Ex. 12.)



(Ex. 11, Case No. 1:18-cv-01976-RGA, D.I. 1-1 at 7.)  RSB subsequently settled its lawsuit against Xtant, defining the above design as infringing, even though the fixation wall (the base plate) is part of a ring. (Ex. 23, RSB-Xtant Settlement Agreement.)  RSB's expert (Drewry) even relied on this settlement agreement as evidence of licensing of the Asserted Claims for both patents-in-suit. (Ex. 18, ¶418; Ex. 19, 110:14-116:5.)  At his deposition, however, he refused to say whether it has a base plate.  (Ex. 19, 105:15-110:10.)

*     *     *

RSB's *only* argument that Michelson 376 does not anticipate the Asserted '234 claims is that it does not disclose a base plate. That argument is contrary to this Court's claim construction, the intrinsic record from RSB's related patent applications, patents filed by RSB's expert, RSB's own conduct in marking its commercial products, and the positions RSB itself has taken for purposes of asserting infringement. Trailing wall 104 in Michelson 376 *is* a base plate. The Court should grant summary judgment of invalidity of the Asserted '234 claims.

## V.    THE ACCUSED PRODUCTS DO NOT INFRINGE ANY OF THE ASSERTED '537 CLAIMS BECAUSE THEY DO NOT INCLUDE A BASE PLATE FOR POSITIONING PRIMARILY BETWEEN ANTERIOR PORTIONS OF LIP OSTEOPHYTES

All Asserted '537 Claims require that a base plate be "configured to fit primarily between anterior portions of adjacent vertebral bones' lip osteophytes." There is no evidence that the alleged base plates in DePuy's Accused Products are configured to fit primarily between anterior portions of lip osteophytes, or to fit between osteophytes at all. All of the evidence from surgeons who have used the Accused Products is that they are *not* placed between osteophytes. No DePuy document instructs surgeons to place the devices between osteophytes, and no DePuy development document ever describes that DePuy intended its devices to be so positioned. DePuy's Accused Products do not meet the "lip osteophyte" limitation of the '537 patent.

### A.    The Court's Construction Of "Lip Osteophyte"

This Court construed "lip osteophyte" to mean: "bony outgrowth at the lip." (D.I. 123 at 9.)[4] The Court rejected RSB's argument that this term should not be limited to outgrowths, but rather, should be construed to mean "the strongest part of the bone," or (later) "hard, ossified" bone. (D.I. 123 at 10.)

---

[4] In this context, "outgrowths" are bone spurs. RSB's surgeon expert (Dr. Hynes) regards a group of bone spurs as osteophytes. (Ex. 16, Hynes tr. at 155:13-23; 170:12-22; 171:9-19.)

### B.    The Meaning Of "Fit[ting] Primarily Between Anterior Portions Of Adjacent Vertebral Bones' Lip Osteophytes"

In order to evaluate the "lip osteophyte" issue, some orientation is helpful.  As shown below, "anterior" is toward the front of the body, and "posterior" is toward the back.



RSB explained to the PTAB the approximate location where "lip osteophytes" may grow is at the lip (or edge) around the endplate of a vertebra.  Looking down on the vertebral body from above, RSB illustrated this location using a blue dotted line.



(Ex. 15 at 34.)  RSB then explained that the endplate is divided equally between anterior and posterior portions, and that, in order to "fit primarily between anterior portions of adjacent bones' lip osteophytes," a majority of the area of an alleged base plate must be located in the *anterior lip* region.



(*Id.*, 35.)  Importantly, RSB further explained that *none* of the interior of the vertebral body is part of the lip; the lip is only the outer edge.



(*Id.*, 36.)  In evaluating this "fit primarily" requirement against a prior-art Fraser patent, RSB argued to the PTAB that more than 50% of the alleged base plate must fit between anterior lip osteophytes; RSB excluded any portion of the device that sat between the interior portion of the endplate, as well as any portion that extended into the posterior half of the endplate.  As RSB illustrated (below), only the portions colored in orange sat between the anterior lip osteophytes, while those colored in red did not.



(*Id.*)[5]  To meet this limitation, RSB explained that the area of portions of a base plate on the anterior lip must exceed the area of portions on the anterior non-lip region and in the posterior region.  (*Id.* at 35-37.)  It is a mathematical calculation.

The PTAB relied on RSB's argument, and found that the alleged prior art base plate did not fit primarily between lip osteophytes, because more than 50% of the area of the alleged base plate was not in the anterior lip region.  (Ex. 13 at 29-34.)

---

[5] RSB contends now that some of the orange (*e.g.*, plate 20 in Fraser 106) is not between lip osteophytes.  (Ex. 18, ¶297.)

### C.     DePuy's Accused Products Are Not Positioned Between Lip Osteophytes

Osteophytes—bone spurs—are not always present on the vertebra.  (Ex. 3, ¶5.)  The extent of osteophytes can vary widely from person to person.  (Ex. 16, 128:11-129:1, 199:17-23; Ex. 31, Bray tr. at 179:15-17.)  Regardless, the Asserted '537 claims only recite "lip osteophytes," *i.e.*, osteophytes formed at the lip.  There is no evidence that DePuy's Accused Products are positioned between "lip osteophytes," and certainly no evidence that they are placed primarily between them. To the contrary, two surgeons who have actually used DePuy's Accused Products have testified as to how the devices are used, and both testified that they do not position the devices between, or insert bone screws through, osteophytes or bone spurs.  (Ex. 3 , ¶¶5-9; Ex. 24, Cain tr. at 111:20-22; Ex. 25, Hales tr. at 26:6-16, 25:21-23.)  Indeed, no surgeon who has used the Accused Products has testified that they are placed between osteophytes.

DePuy's surgical techniques do not describe or depict positioning the device between osteophytes.  (*E.g.*, Ex. 32, Zero-P Surgical Technique.)  In fact, RSB's expert admitted that this surgical techniques does not show osteophytes.  (Ex. 16, 186:11-187:18; 188:18-189:25.)  When osteophytes are mentioned, the instruction is to remove them.  (Ex. 26, DEPRSB_00083701.)  In other words, far from being "configured to fit primarily between anterior portions of adjacent vertebral bones' lip osteophytes," DePuy's Accused Products are expressly designed ***not*** to be placed between lip osteophytes.

This is consistent with the testimony of the people who actually designed the Accused Products, including Dr. Cain, a surgeon-developer.  (Ex. 3, ¶5.)  The evidence demonstrates that, consistent with the surgical technique manuals, any osteophytes that are present should be removed.  (*Id.*, ¶9; Ex. 25, 20:11-21:7, 21:15-19, 26:6-11.)

**D.     RSB's Counter-Arguments Ignore The Court's "Outgrowth" Requirement, The "Lip" Location, And The "Fit Primarily" Requirement**

In an effort to obscure its proof problems, RSB and its expert (Hynes) make two different arguments.  Neither has merit.  First, they attempt to argue that hard (or "hardened") bone constitutes a "lip osteophyte," thus reading bony outgrowth out of the claim.  This was RSB's entire argument during claim construction and it has already been rejected by this Court.  Indeed, as seen below, Hynes's interpretation of "bony outgrowth" is virtually identical to the construction RSB proposed for "lip osteophyte," which the Court rejected:

| Dr. Hynes's Interpretation | RSB's Prior Proposed Construction |
|---|---|
| layers of ossified bone that develop and extend from an inner circumference of the apophyseal ring, forming a region of dense, hard cortical bone about the periphery of the caudal/cranial endplates of a vertebra | the hard, ossified bone located at the lip region circumferentially surrounding an end of a vertebral body |

Ex. 27, Hynes Opening Report (excerpt) at ¶144; D.I. 106 at 1.[6]

Second, RSB attempts to argue that the lip region is not limited to the lip, and can include the entire anterior portion of the vertebra.  As discussed below, this argument is directly contrary to the position it advocated (and caused the PTAB to adopt) in securing confirmation of patentability, and substantially affects the "fit primarily" requirement.

**1.     Dr. Hynes's "Anterior Portions Of Lip Osteophytes" Encompass The Entire Anterior Portion Of The Vertebra**

To assert infringement, Hynes expands the claim to encompass a majority of the area of a vertebra, in contrast to the methodology that RSB (and Drewry) successfully argued to the PTAB in the IPRs.  Below is a CT scan image of a slice of a vertebra, looking down from above, with red

---

[6] *See also* Ex. 31, 180:10-25 (testifying that a "lip osteophyte" is not an "osteophyte," and that the "lip of the vertebral body which has hardened" is a "lip osteophyte," whereas an "osteophyte" is an "outprojection[] or bone spur []."

(and pink) representing what Hynes says is lip osteophyte. The orange rectangle represents the position of a "typical intervertebral construct."[7]



(Ex. 28, Hynes Reply Report at ¶23 (image rotated 180° to place anterior side on bottom).) This "lip" represents a majority of the area of the vertebra (annotated, outlined in blue), in contrast to the IPR analysis:



According to Hynes, a lip osteophyte can even extend across the entire end plate. (Ex. 16 at 119:5-120:1.) It is the proverbial "nose of wax" that can be shaped, expanded, and compressed at will to serve RSB's needs. *See White v. Dunbar*, 119 U.S. 47, 51 (1886); *see also Nautilus, Inc.*

---

[7] Hynes, however, emphasized many times that he has never seen any Accused Product used in surgery and does not know how they are used by surgeons. (Ex. 16, 81:12-16, 110:14-21, 215:11-23.)

*v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) (patent claims, when read in light of the specification and the prosecution history, must inform, with reasonable certainty, those skilled in the art about the scope of the invention).

Additionally, much of Hynes's "lip osteophyte" is on the *interior* of the vertebra. For example, as shown below, Hynes identifies the portion shaded in red as "lip osteophyte." Much of this red coloring is inside the outer shell of the vertebra (anterior portion on top in this view).



(Ex. 28, ¶11.) But as can be seen in the inset image on the left, this cross-section is taken *through* vertebra, such that it is showing the interior of the vertebra (i.e., it is *not* looking at the end plate of the vertebra). With respect to other images, Hynes confirmed this to be the case. (Ex. 16, 164:17-165:25, 178:22-179:4.) Portions of the vertebra that are interior cannot be an "outgrowth." This is contrary to the Court's construction.

### 2.   Neither RSB Nor Dr. Hynes Performed A Proper "Fit Primarily" Analysis

As discussed above, RSB explained in the IPR that more than 50% of the base plate must be between the lip osteophytes. (Ex. 15 at 34-37.) But RSB and its expert, Hynes, failed to perform any such analysis with respect to DePuy's Accused Products. At his deposition, Hynes was asked to consider whether the claim limitation would be met if the alleged lip osteophyte were thinner.

Counsel for DePuy marked up the CT scan shown above, and asked him to assume that only those portions of the orange box outside the blue lines—to the left of the blue line on the left side of the image, and to the right of the blue line on the right—are below a lip osteophyte.  The marked up image from his deposition is shown below (rotated 180°).



(Ex. 29.)

Hynes testified that, in his opinion, such a device would meet the lip osteophyte limitation (Ex. 16, Hynes tr. at 135:21-136:16), even though there can be no dispute that, in this hypothetical, substantially less than 50% of the device would be positioned beneath a "lip osteophyte."  He further testified that, in conducting his analysis of whether DePuy's alleged base plate fits primarily between lip osteophytes, this was the standard that he used.  (*Id.*, 136:18-137:23.)  In other words, RSB's expert (Hynes) did not apply the same test RSB (and its other expert, Drewry) advocated (and the PTAB adopted) in the IPR.  A simple comparison of Hynes's modified image (above), and the annotated vertebra and colorized image of Fraser submitted by RSB, reveals the obviously inconsistent standard.



RSB and Hynes are simply not applying the proper construction of "primarily."  (*See also* Ex. 18 at ¶345 (Drewry demonstrating how slight changes in position of an implant take a device outside the scope of the "primarily" limitation).)

*        *        *

DePuy's Accused Products do not meet the "lip osteophyte" limitation.  There is no evidence that the alleged base plates in DePuy's Accused Products fit primarily between anterior portions of lip osteophytes—or any osteophytes for that matter.  Desperate to avoid that fact, RSB resorts to already-rejected claim construction arguments.  Summary judgment of non-infringement on the '537 patent is thus appropriate.

## VI.    CONCLUSION

For all the foregoing reasons, the Court should enter summary judgment that (1) claims 9 and 12 of the '234 patent are anticipated by Michelson 376, and (2) the Asserted '537 Claims are not infringed.

ASHBY & GEDDES

*Of Counsel:*

/s/ John G. Day

Calvin P. Griffith

John G. Day (#2403)

Patrick J. Norton

Andrew C. Mayo (#5207)

Kenneth S. Luchesi

500 Delaware Avenue, 8th Floor

T. Kaitlin Crowder

P.O. Box 1150

**JONES DAY**

Wilmington, DE  19899

North Point

(302) 654-1888

901 Lakeside Avenue

jday@ashbygeddes.com

Cleveland, OH  44114-1190

amayo@asbygeddes.com

(216) 586-3939

*Attorneys for Defendants*

Dated: June 23, 2022

## <u>WORD COUNT CERTIFICATION OF COMPLIANCE</u>

The undersigned hereby certifies that the foregoing brief contains 5,990 words (exclusive of the cover page, tables of contents, authorities and abbreviations, and signature block) in Times New Roman 12-point font, counted using Microsoft Word's word count feature.

/s/ *John G. Day*

John G. Day

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of June, 2022, the attached **DEPUY'S**

**OPENING MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL**

**SUMMARY JUDGMENT** was served upon the below-named counsel of record at the

address and in the manner indicated:


John C. Phillips, Jr., Esquire                         <u>VIA ELECTRONIC MAIL</u>
PHILLIPS, GOLDMAN, McLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE  19806

Erik B. Milch, Esquire                                 <u>VIA ELECTRONIC MAIL</u>
COOLEY LLP
11951 Freedom Drive
One Freedom Square
Reston, VA  20190-5656

Frank V. Pietrantonio, Esquire                         <u>VIA ELECTRONIC MAIL</u>
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004

Joseph M. Drayton, Esquire                             <u>VIA ELECTRONIC MAIL</u>
COOLEY LLP
55 Hudson Yards
New York, NY  10001

Rose S. Whelan, Esquire                                <u>VIA ELECTRONIC MAIL</u>
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC  20004

Reuben Chen, Esquire                                   <u>VIA ELECTRONIC MAIL</u>
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130

*/s/ John G. Day*
_____
John G. Day

{01506347;v1 }