IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RSB SPINE, LLC, | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1515-RGA |
| | ) | |
| DEPUY SYNTHES SALES, INC. and DEPUY | ) | |
| SYNTHES PRODUCTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEPUY'S REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT**

*Of Counsel:*

Calvin P. Griffith
Patrick J. Norton
T. Kaitlin Crowder
Thomas S. Koglman
Olivia Pedersen
Robert M. Breetz
Kenneth S. Luchesi
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114
(216) 586-3939

Dated:  August 5, 2022

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 1

II.     THE ASSERTED '234 CLAIMS ARE INVALID AS ANTICIPATED BY
        MICHELSON 376 .................................................................................... 1

        A.      To Meet The Limitations Of A Claim, A Prior Art Reference Is Not
                Required To Use The Same Words As The Claim ................................ 1

        B.      Drewry's Requirement That "A Plate Be An Identifiable Structure" Does
                Not Distinguish Over Michelson 376 .................................................. 3

        C.      RSB's "Identifiability" Requirement Is Refuted By The Evidence...................... 4

        D.      Structures Similar To Trailing End 104 Have Been Identified As Plates By
                RSB, Its Expert, And POSAs .............................................................. 6

III.    THE ACCUSED PRODUCTS DO NOT INCLUDE A BASE PLATE FOR
        POSITIONING PRIMARILY BETWEEN ANTERIOR PORTIONS OF LIP
        OSTEOPHYTES ...................................................................................... 8

        A.      A "Lip Osteophyte" Is An Osteophyte .................................................. 8

        B.      "Lip Osteophytes" Are Located At The Lip Of The Vertebra ............................. 9

        C.      Hynes's Radiographs Do Not Present A Fact Dispute Regarding The "Lip
                Osteophyte" Limitation ..................................................................... 10

        D.      RSB Has No Evidence That The Accused Products Include A Base Plate
                For Positioning Primarily Between Anterior Portions Of Lip Osteophytes ........ 13

        E.      RSB Cannot Prevail Under The Doctrine Of Equivalents For This
                Limitation ..................................................................................... 18

IV.     CONCLUSION ....................................................................................... 18

# TABLE OF AUTHORITIES

Page

CASES

*ACQIS LLC v. Appro Int'l, Inc.*,
No. 6:09 CV 148, 2011 WL 382556 (E.D. Tex. Feb. 3, 2011).................................5

*E.I. du Pont de Nemours & Co. v. Unifrax I LLC*,
C.A. No. CV 14-1250-RGA, 2016 WL 158031 (D. Del. Jan. 13, 2016)*, aff'd,*
921 F.3d 1060 (Fed. Cir. 2019*)*.................................4

*EMI Grp. N. Am. v. Cypress Semiconductor Corp.*,
268 F.3d 1342 (Fed. Cir. 2001).................................2, 3

*Freedman Seating Co. v. Am. Seating Co.*,
420 F.3d 1350 (Fed. Cir. 2005).................................18

*Hologic, Inc. v. SenoRx, Inc.*,
No. C-08-00133 RMW, 2009 WL 8760730 (N.D. Cal. Oct. 30, 2009) .................................2

*In re Bond*,
910 F.2d 831 (Fed. Cir. 1990).................................2

*Moore U.S.A., Inc. v. Standard Reg. Co.*,
229 F.3d 1091 (Fed. Cir. 2000).................................18

*Schering Corp. v. Geneva Pharms.*,
339 F.3d 1373 (Fed. Cir. 2003).................................3

*Texas Instruments Inc. v. ITC*,
988 F.2d 1165 (Fed. Cir. 1993).................................11

*Tronzo v. Biomet, Inc.*,
156 F.3d 1154 (Fed. Cir. 1998).................................18

*U.S. Water Servs., Inc. v. Novozymes A/S*,
No. 13-cv-jdp, 2015 WL 4634352 (W.D. Wis. July 29, 2015) .................................5

*Warner–Jenkinson Co.,v. Hilton Davis Chem. Co.*,
520 U.S. 17 (1997).................................18

**STATUTES**

35 U.S.C. § 102........................................................................................................2

## Table of Abbreviations

| Term | Abbreviation |
|---|---|
| RSB Spine, LLC | RSB or Plaintiff |
| DePuy Synthes Sales, Inc. and DePuy Synthes Products, Inc., | DePuy or Defendants |
| U.S. Patent No. 6,984,234 | the '234 patent |
| U.S. Patent No. 9,713,537 | the '537 patent |
| Defendants' Zero-P, Zero-P VA, SynFix LR and SynFix Evolution products | DePuy's Accused Products |
| Claims 9 and 12 of the '234 patent | Asserted '234 Claims |
| Claims 10, 12, 14, 24, 26 and 30 of the '537 patent | Asserted '537 Claims |
| Asserted '234 Claims and Asserted '537 Claims | Asserted Claims |
| United States Patent Publication No. 2002/0099376 to Michelson | Michelson 376 |
| U.S. Patent No. 6,432,106 to Fraser et al. | Fraser 106 |
| June 22 Declaration of Dr. Christopher Cain | Cain Decl. |
| RSB Spine, LLC'S Answering Brief in Opposition to Defendants' Motion for Summary Judgment (D.I. 188) | "Opp." |
| Defendants Opening Memorandum in Support of Their Motion for Partial Summary Judgment (D.I. 168) | "Mot." |

# I.    INTRODUCTION

RSB's arguments against summary judgment fail as a matter of law.  ***First***, with respect to anticipation of the Asserted '234 Claims, RSB argues that Michelson 376 fails to disclose a base plate because it does not use the word "plate" for structure 104, identified as a "trailing end" in Michelson 376.  It is black letter law that a prior art reference is not required to use the same words that the claim uses in order to anticipate.  RSB identifies only one structural difference between trailing end 104 and a base plate: trailing end 104 is not a separate (or distinct) piece in the plate/cage combination device.  But this Court has already rejected that argument as a matter of claim construction.

***Second***, with respect to "lip osteophyte" and the Asserted '537 Claims, RSB has no evidence that any of the Accused Products include a base plate that is configured to fit primarily between anterior portions of lip osteophytes.  Desperate to avoid this fact, RSB's infringement theory turns the Court's construction of "lip osteophyte" on its head— arguing that a lip osteophyte is ***not*** an osteophyte, and that it does not need to be located at the ***lip***.  This is contrary to the Court's claim construction, but even applying RSB's incorrect construction, RSB has no evidence this limitation is met.

# II.    THE ASSERTED '234 CLAIMS ARE INVALID AS ANTICIPATED BY MICHELSON 376

Aside from the "base plate" limitation, RSB does not dispute that Michelson 376 discloses every other limitation of the Asserted '234 Claims.  Therefore, if the Court determines that Michelson 376 discloses a "base plate," the Asserted '234 Claims are anticipated.

## A.    To Meet The Limitations Of A Claim, A Prior Art Reference Is Not Required To Use The Same Words As The Claim

RSB argues at length that trailing end 104 of Michelson 376 is not a base plate because the reference never uses the word "plate" to describe it.  (Opp. at 8-9.)  The argument is a *non-sequitur*.

For a prior art reference to anticipate under 35 U.S.C. § 102, the test "is not an 'ipsissimis verbis' ['in the identical words'] test." *In re Bond*, 910 F.2d 831, 832-33 (Fed. Cir. 1990); *see also Hologic, Inc. v. SenoRx, Inc.*, No. C-08-00133 RMW, 2009 WL 8760730, at *4 (N.D. Cal. Oct. 30, 2009) ("But the reference need not use the exact same terms used in the patent to disclose the elements of the invention."). The fact that Michelson 376 uses the term "trailing end," rather than "plate," does not refute that trailing end 104 meets the base plate limitation.[1]

The Asserted '234 Claims specify structural requirements for the base plate, and trailing end 104 meets them all. It has a first end and a second end, and top and bottom surfaces. It also has first and second screw holes. Bone screws go through those holes, at the angles specified, and are inserted into adjacent vertebrae. It provides fixation for the adjacent vertebrae to stabilize them for fusion. It meets the limitation of a base plate in the asserted claims of the '234 patent.

RSB identifies only one structural difference between a base plate and trailing end 104 of Michelson 376: trailing end 104 is a portion of a monolithic structure. (Opp. at 9-11 ("a 'plate' is recognized by those of skill in the art to be 'a distinct component or structure and not a contiguous portion of a monolithic structure'").) In other words, because trailing end 104 is not a separate piece (or distinct) in the plate/cage combination device, it cannot be a base plate, according to RSB. But this Court has already rejected separateness as a requirement for a base plate (D.I. 123 at 8), as did the PTAB in IPRs of the '234 patent (D.I. 169, Ex. 14 at 21.). RSB's argument would render these claim-construction determinations a nullity.

Citing *EMI Grp. N. Am. v. Cypress Semiconductor Corp.*, 268 F.3d 1342 (Fed. Cir. 2001), RSB argues that DePuy must show that POSAs would have called structures like trailing end 104

---

[1] RSB implicitly concedes this legal point. For example, though Michelson 376 never uses the word "toggle," RSB accepts that Michelson 376 discloses the limitation of claim 12 requiring that the bone screws be permitted to "toggle."

a "base plate" in 2003 (or "recognized" it as such). (Opp. at 10-11.) RSB misstates the law, and how it applies here. *EMI* is an inherency case, and was analyzing whether a feature not expressly disclosed was, in fact, inherently disclosed. *EMI,* 268 F.3d at 1350. While it did refer to the feature being "recognized" by POSAs, subsequent case law establishes that there is no requirement that an inherently disclosed feature have been recognized at the time. *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003) ("Thus, recognition by a person of ordinary skill in the art before the critical date of the '716 patent is not required to show anticipation by inherency. The district court therefore did not err in allowing for later recognition of the inherent characteristics of the prior art '233 patent."). Further, here there is no dispute that trailing end 104 is expressly disclosed in Michelson 376.

### B.     Drewry's Requirement That "A Plate Be An Identifiable Structure" Does Not Distinguish Over Michelson 376

RSB's opposition recasts its rejected "separateness" requirement as one of "identifiability," in an apparent attempt to make its and Drewry's arguments consistent with the Court's Markman order:

> Mr. Drewry's opinions are consistent with the Court's explanation that a plate need not be distinct from bone graft material or a spacer. That is because Mr. Drewry's opinions concern the *dimensions* and *structure* of a "plate," and not its material (bone graft), purpose (spacer) or composition with other structures. Pursuant to Mr. Drewry's opinions, a monolithic construct could be considered a plate, provided that the structure as a whole, and not merely an arbitrarily subdivided portion thereof, would be identifiable to a POSITA as a plate. Thus, the requirement that a plate be an identifiable structure is not incompatible with a plate being comprised of bone graft material or indistinct from a spacer. (Drewry Reb. Rep., ¶¶ 99-100.)

(Opp. at 12.) The argument fails to distinguish over Michelson 376.

Indisputably, trailing end 104 is an identifiable structure. It is specifically called out in Michelson 376. It does exactly the same thing that the base plate in the '234 patent does; it is a fixation structure for stabilizing adjacent vertebrae for fusion. It provides screw holes for that

purpose, and these features are all actually identified in Michelson 376. There is nothing arbitrary about the identification (and identifiability) of trailing end 104.

Further, the vague argument that "Mr. Drewry's opinions concern the *dimensions* and *structure* of a 'plate'" (Opp. at 12) is seemingly inconsistent with the intrinsic record here. RSB sought to include the same (apparently) dimensional/structural limitations in the construction of "base plate" in the IPRs, and the PTAB explicitly rejected them. (D.I. 169, Ex. 14 at 27-30.) The PTAB did so because those structural requirements were inconsistent with the preferred embodiment in the '234 patent. (*Id.*) And while RSB claims that Drewry focuses on dimensions and structure, RSB never identifies anything about the dimensions or structure of Michelson's trailing end 104 that would disqualify it from being a base plate, *other than the fact that it is not distinct from the spacer*, which this Court has concluded is not a requirement for a base plate.

In short, RSB's vague "identifiability" requirement fails to distinguish over Michelson 376 and cannot be squared with the Court's claim construction.

## C. RSB's "Identifiability" Requirement Is Refuted By The Evidence

Even if one were to credit RSB's newly-alleged requirement that, to be a base plate, a structure must be capable of being identified as a plate, Michelson's trailing end 104 indisputably meets such a requirement. Not only is it capable of being identified as a plate, *it has been so identified*.

During the prosecution of a continuation of the '537 patent, the Examiner analyzed the Michelson 376 implant and found that trailing end 104 constitutes a base plate. (Mot. at 7.) RSB argues now that the Examiner's view is not dispositive as to whether Michelson 376 discloses a base plate. (Opp. at 13.) However, it is indisputable that trailing end 104 is capable of being identified as a plate—it was, by the Examiner. Further, this is intrinsic evidence that a plate may be monolithic with a plate/cage combination device. *See, e.g.*, *E.I. du Pont de Nemours & Co. v.*

*Unifrax I LLC*, C.A. No. CV 14-1250-RGA, 2016 WL 158031, at *8 (D. Del. Jan. 13, 2016)*, aff'd*, 921 F.3d 1060 (Fed. Cir. 2019*)* ("Intrinsic evidence includes the patent and its prosecution history, related patents and their prosecution histories, and the prior art that is cited or incorporated by reference in the patent-in-suit and prosecution history.") (quoting *U.S. Water Servs., Inc. v. Novozymes A/S*, No. 13-cv-jdp, 2015 WL 4634352, at *6 (W.D. Wis. July 29, 2015)); *see also ACQIS LLC v. Appro Int'l, Inc.*, No. 6:09 CV 148, 2011 WL 382556, at *4 (E.D. Tex. Feb. 3, 2011) ("Although the statements were made during the prosecution of a continuation application that was filed years after the original statement, which is typical for continuation applications, it is still relevant intrinsic evidence.").[2]

RSB also contends that it "specifically disputed that Michelson '376 disclosed a base plate having the features recited in the pending claims." (Opp. at 13-14.) This is true: RSB disputed that Michelson 376 discloses a base plate *with holes directed toward a lip osteophyte* (which is not a limitation of the Asserted '234 Claims). It did *not* dispute, however, that Michelson 376 discloses a base plate, as its argument to the Examiner illustrates:

> Although on page 17 the Office identifies Michelson '376 as disclosing a base plate [] "able to be placed anteriorly along the cortical rim and able to be disposed against the lip osteophyte, where the holes are directed towards the lip osteophyte such that the bone anchors are able to be placed there through," [] the Office fails to cite any particular portion of Michelson '376 expressly disclosing a base plate *having such a feature*.

(D.I. 189-2, Ex. 15 at 13-14, emphasis added.) RSB also notes that the Examiner found one pending claim reciting a base plate (claim 31) to be allowable. (Opp. at 14.) But as shown below,

---

[2] RSB also contends that the Examiner was applying "the more permissive 'broadest reasonable interpretation' standard." (Opp. at 13.) But RSB does not explain how that alleged interpretation would differ from the Court's construction, or how or why it would make any difference regarding its application to Michelson 376.

RSB had to substantially amend the claim—by adding numerous limitations to the "base plate" limitation—to make it so.

> a base plate having a top surface, first and second ends, a bottom surface, and a plurality of bone anchor holes, the base plate having a primary member and a secondary member, a top surface of the primary member and a top surface of the secondary member forming an angle greater than 90 degrees and less than 180 degrees, at least a portion of the top surface of the secondary member (1) protruding away from the first anterior surface of the first vertebral bone or the second anterior surface of the second vertebral bone when the base plate is implanted and (2) not being configured to bear weight, and

(D.I. 170, Ex. 34 at 3.) Other "base plate" claims were rejected. This is further evidence that Michelson 376 discloses a "base plate," and that RSB acquiesced to that finding.

### D. Structures Similar To Trailing End 104 Have Been Identified As Plates By RSB, Its Expert, And POSAs

To the extent that "identifiability" as a plate is the test for whether a structure is a base plate, other evidence establishes that structures like Michelson's trailing end 104 are capable of being identified as plates. For example, RSB marked the labels for its own monolithic plate/cage device with the '234 patent number (thus indicating that it has a "base plate"). That device is shown below on the right and is essentially similar to the Figure 32 embodiment of the '537 patent.

| '537 Patent, Figure 32 | InterPlate C-P |
|---|---|
|  |  |

████████████████████████████████████████████

████████  ████████████████████████████████  ████████

████████  Indisputably, this structure was capable of being identified as a plate.

In a now-settled, previously co-pending litigation, RSB itself identified a portion of a monolithic ring structure as a plate, as shown below on the left.

| Xtant Device | Michelson 376 |
|:---:|:---:|
|  | |

For this device (made by Xtant), RSB identified the trailing end of the monolithic ring (in red box, left column), where the screws are inserted for fixation, as a base plate—even though it was not called a plate. Trailing end 104 in Michelson is equally identifiable as such. RSB provides no explanation for why one should be treated differently than the other. In each case, a trailing end (with screw holes) of a plate/cage combination device is indisputably identifiable as a plate.

Similarly, a patent issued to one of RSB's experts identifies as a plate the structure shown below on the left, in blue.

| '058 Patent | Michelson 376 |
|:---:|:---:|
|  | |

The structure is described as "plate" 80 that may be "integrally formed with the body." RSB makes no attempt to explain why the same characterization would not apply to the Michelson device (shown above on the right). Once again, the trailing end is part of a monolithic plate/cage combination device, and is indisputably identifiable as a plate. Indeed, it *was* identified precisely that way by persons of skill in the art.

The Court should grant summary judgment of invalidity of the Asserted '234 Claims.

## III.    THE ACCUSED PRODUCTS DO NOT INCLUDE A BASE PLATE FOR POSITIONING PRIMARILY BETWEEN ANTERIOR PORTIONS OF LIP OSTEOPHYTES

RSB and its expert (Hynes, who has never used the Accused Products) failed to come forward with evidence that the Accused Products are placed between osteophytes—at the lip or elsewhere. They further failed to do any analysis of whether more than 50% of the area of any Accused Product is between lip osteophytes (the "primarily" requirement). RSB attempts to excuse these failures by contending that lip osteophytes are different from osteophytes, and by criticizing DePuy's expert (Cheng)—whose lip osteophyte analysis DePuy did not even mention in its brief. RSB's argument are insufficient to create any genuine issue of material fact.

### A.    A "Lip Osteophyte" Is An Osteophyte

The Court has determined that a lip osteophyte is a "bony outgrowth at the lip." (D.I. 123

at 9.) RSB opposed this construction, arguing instead that lip osteophyte should be construed to mean "the strongest part of the bone," or merely "hard, ossified" bone. (*Id*.) The Court rejected those arguments. (*Id*.) The Court recognized that the term "osteophyte" had a well-known meaning—bony outgrowth—and adopted that meaning as part of its construction. (*Id*. at 10.) The Court noted that the term "lip osteophyte" was not used widely in the literature, but did not, as RSB suggests, find that a lip osteophyte was something different than an osteophyte. To the contrary, the Court expressly adopted the well-known meaning of osteophyte into the construction of lip osteophyte: "Absent a clear disavowal in the patents of the well-known meaning of 'osteophyte,' which I do not see, I will adopt Defendants' proposed language of 'bony outgrowth.'" (*Id*.) Put simply, a lip osteophyte is an osteophyte.

Despite this, RSB argues repeatedly that "lip osteophytes" are ***not*** osteophytes. (Opp. at 6 ("But a lip osteophyte, as construed by the Court, is not equivalent to an osteophyte or bone spur."); *see also* Opp. at 17, 18 and 25.) RSB's infringement claims are premised on its assertion that lip osteophytes are ***not*** necessarily osteophytes—*i.e.*, bony outgrowths. RSB cannot avoid summary judgment by ignoring the Court's claim construction, and applying instead its previously-rejected argument that "lip osteophytes" are merely "ossified, or hardened, bone." (*Id*. at 3.)

## B.   "Lip Osteophytes" Are Located At The Lip Of The Vertebra

RSB claims there is a fact dispute regarding whether a "lip osteophyte" can overlap with the vertebral side surface (Opp. at 19), but this is not a factual question and it is not in dispute. The Court's construction specified where the lip osteophytes must be located—at the lip of the vertebra (D.I. 123 at 9)—and further determined that the lip is three-dimensional, and can include a portion of the side surface (or end plate) of the vertebra (*id*. at 10-11). RSB cannot manufacture a fact dispute by mischaracterizing DePuy's position.

RSB's assertion that DePuy's expert, Cheng, has limited the "lip osteophyte" to a two-dimensional line and excluded any portion of the side surface is untrue. RSB cites to two specific passages of Cheng's deposition for support. (Opp. at 17, 21.) In the first, Cheng merely testified that, under the Court's construction, lip osteophytes do not grow only in an anterior direction. (D.I. 187, Ex. 7, Cheng tr. at 124:22-125:5.) He noted that, because the lip is a "curvilinear surface," outward growth might not always be in an anterior direction. (*Id*. at 125:8-126:7.) There is nothing in this testimony even remotely inconsistent with the Court's claim construction.

RSB next cites a passage at page 163 of Cheng's deposition for the proposition that Cheng misapplied the Court's construction to conclude that the lip cannot share any portion of the vertebral side surface. (Opp. at 3-4, 6, 17, and 21-22.) Far from supporting RSB's contention, the cited testimony says the exact ***opposite*** of what RSB contends. Cheng testified that:

> [T]he edge is defined [by] the intersection between those two surfaces. ***That intersection is part of both the cortical shell and the endplate***. You need the two to define the edge.

(D.I. 187, Ex. 7 (Cheng tr.), 163:6-10 (emphasis added).) In other words, Cheng expressly stated that the lip (edge) includes part of the endplate (side surface). RSB's expert on validity issues, Drewry, similarly testified that the lip is "the intersection of two lines, so it's where the side surface ends and where the top surface ends, at that intersection." (D.I. 187, Ex. 5 at 143:19-21; *see also id.*, 144:6-8 ("a unique rim around the circumference of the vertebral body where the side surface and the top surface intersect").) These issues are further addressed in DePuy's opposition to RSB's motion to exclude Cheng (D.I. 186 at 34-38.)

### C. Hynes's Radiographs Do Not Present A Fact Dispute Regarding The "Lip Osteophyte" Limitation

RSB asserts that this is a "battle of the experts" and that "[a]t base, the parties dispute the metes and bounds of a 'lip osteophyte' under the Court's construction." (Opp. at 18-19.) Not so.

A party cannot avoid summary judgment, or claim a "battle of the experts," by having its expert misapply—or simply disregard—the Court's claim construction. Yet, that is precisely what RSB seeks to do here with Hynes's radiographs.

One of several deficiencies with the radiographs is that none relate to patients where one of DePuy's Accused Products were implanted. As such, they have little (if any) relevance to the infringement issue. They do, however, demonstrate that RSB is ignoring the Court's construction of lip osteophyte. In particular, they illustrate that, under Hynes's so-called analysis, a lip osteophyte is not limited to a bony outgrowth, and it need not be located at the lip.

RSB admits that Hynes considered lip osteophytes to be "bone hardening," and bone that "ossifies" in his analysis (Opp. at 20), echoing RSB's rejected claim construction arguments. Perhaps not surprisingly, and, as RSB concedes, much of what Hynes's colors a lip osteophyte in these images is on the *interior* of the vertebra. RSB argues that this is irrelevant because lip osteophytes are three-dimensional, and thus some portion would be on the interior of the vertebra. (*Id*. at 22.) But that ignores that a lip osteophyte is an ***outgrowth***—it must grow ***out*** from the surface of the healthy vertebra, not inward. RSB similarly ignores that most of what Hynes calls a lip osteophyte in these images is not at the ***lip***. Indeed, in Hynes's view, a lip osteophyte can extend across the entire end plate. (D.I. 169, Ex. 16 at 119:5-120:1.) Such an interpretation is plainly incorrect, and would improperly read "lip" out of the claim entirely. *See, e.g.*, *Texas Instruments Inc. v. ITC*, 988 F.2d 1165, 1171 (Fed. Cir. 1993).

Tellingly, RSB's current (infringement) argument is completely at odds with the position RSB took when arguing about this term to the PTAB (to maintain validity). At the PTAB, RSB argued that lip osteophytes were located at a narrow portion of the endplate around the circumference of the vertebra. A simple comparison between RSB's IPR image depicting the

location of lip osteophytes (on the left), and one of the images from Hynes's report (on the right) is striking—and transparently result-oriented.



Hynes's understanding of what constitutes a lip osteophyte for purposes of infringement (shown in red) is plainly not the same as the understanding RSB and its other expert, Drewry, successfully argued to the PTAB for purposes of validity.

RSB dismisses this inconsistency, characterizing it as a fact dispute regarding the "dimensions of a lip osteophyte." (Opp. at 23.) According to RSB, the IPR illustrations were merely intended as "helpful tools to generally depict lip osteophyte positioning," and urges that it has "always maintained" that lip osteophytes can vary widely to encompass "a region." (*Id*. at 24.) RSB did indeed argue that the vertebral lip encompasses a "region," but the Court expressly declined to include that word in its construction, calling it vague. (D.I. 123 at 10.) The Court was correct to do so, as RSB confirms by asserting that the "dimensions [of a lip osteophyte] across patients [cannot] be reasonably and universally represented" (Opp. at 24), thus making the case that its understanding of the term (at least for purposes of infringement) is indefinite.

RSB contends that its IPR illustrations accurately convey that "patient lip osteophyte formations *would* all commonly share outgrowth that extend *from* the vertebral lip." (Opp. at 24 (emphasis in original). To the extent this statement can be understood, RSB apparently is claiming (erroneously) that these graphics were intended only to indicate the location of the vertebral lip— from which lip osteophytes will at some point in the future possibly extend—and not intended to

identify the location of actual lip osteophytes. To begin, that is not what RSB's graphic says on its face. Rather, it plainly depicts a vertebra, with clear markings identifying and labelling the dotted "lip osteophyte" around the circumference. RSB's purported justification reveals its true argument—a lip osteophyte does not need to be at the lip. In RSB's view, any osteophyte formation anywhere on the endplate, by definition, extends *from* the lip and is therefore a "lip osteophyte." This contrived interpretation completely eliminates the requirement of the Court's construction that a lip osteophyte be "at the lip."

### D. RSB Has No Evidence That The Accused Products Include A Base Plate For Positioning Primarily Between Anterior Portions Of Lip Osteophytes

Nowhere in its opposition does RSB identify evidence that **any** of the Accused Products are configured to fit primarily between anterior portions of lip osteophytes. RSB includes two images from Hynes's report purporting to establish that this limitation is met. Both are reproduced below, with the image on the left showing Zero-P and the image on the right showing Zero-P VA.

 

(Opp. at 25, 26.) Notwithstanding how these images have been labelled, **they do not show lip osteophytes, or any osteophytes at all**, as Hynes admitted. (D.I. 169, Ex. 16 at 186:21-189:25.)

In order to avoid summary judgment, RSB needs evidence of two things: (1) that lip osteophytes have formed in patients where the Accused Products are implanted, and (2) that those lip osteophytes are of a size and dimension that more than 50% of the alleged base plate side surfaces are situated between them when implanted. RSB has no evidence on either point. This

is hardly surprising given RSB's twin admissions that osteophytes are not always present on the vertebra, and that the extent of osteophytes can vary widely from person to person. (D.I. 169, Ex. 3, ¶5 and Ex. 16, 128:11-129:1, D.I. 170, Ex. 31, 179:15-17; Ex. 35 at 99:1-5, 120:2-25, 134:3-11, 143:14-23, 144:17-23, 188:18-189:15); (Opp. at 24, 27.) Nor did Hynes (or anyone else) provide average or typical dimensions of lip osteophytes. (*Id*.)

The Hynes's radiographs cannot be used to establish infringement—none of those patients were implanted with an Accused Product. The only evidence in this case from surgeons who have actually used the Accused Products establishes that they do ***not*** position the devices between, or insert bone screws through, osteophytes or bone spurs. (D.I. 169, Ex. 3, ¶¶5-9; D.I. 170, Ex. 24 at 111:20-22 and Ex. 25 at 25:21-23, 26:6-16.) That evidence is unrefuted—as is the evidence that *if* any osteophytes are present in patients having one of the Accused Products implanted, they are removed. (D.I. 169, Ex. 3, ¶9; D.I. 170, Ex. 25 at 20:11-21:7, 21:15-19, 26:6-11 and Ex. 26.) Tellingly, RSB does not even mention Cain's declaration on these issues in its opposition.

Even if the Court were to *assume* the existence of lip osteophytes in patients with an Accused Product, and further *assume* that they were not removed according to the surgical technique—and the Court should not make either assumption—there is no evidence whatsoever to support a finding that the alleged base plate in any of the Accused Products sits "primarily" between them. As RSB successfully established at the PTAB, the "primarily" requirement means that more than 50% of the side surfaces of the plate must sit between the hypothetical lip osteophytes. (D.I. 169, Ex. 13 at 14, 32-34.) RSB and its experts never did this analysis.

RSB's winning arguments at the PTAB are especially instructive in considering this issue. RSB contends that "Hynes's analysis is consistent" with those arguments, but that assertion does not square with reality. Referring to the figure reproduced below, RSB baldly asserts that

"nowhere did RSB represent the metes and bounds of 'lip osteophyte' versus 'non-lip osteophyte.'" (Opp. at 27.)



Indisputably, however, RSB explicitly represented what was—and what was not—a lip osteophyte in this figure. The illustration specifically labelled certain parts of the vertebra as "portions of lip osteophytes" and other, different parts as "non-lip osteophyte portions."[3]

RSB's discussion of its argument overcoming the Fraser reference is misleading. Referring to the figure shown below, RSB asserts that "[n]either the annotated image of the Fraser '106 implant, nor RSB's accompanying description, claim that the portion of the implant between lip osteophytes is fixed and cannot vary depending on patient morphology." (Opp. at 27.)



---

[3] RSB's citation to Hynes's reports as evidence that its "experts" have taken consistent positions in the litigation and the IPRs ignores the fact that Hynes was not involved in the IPR. Drewry was RSB's expert in the IPRs and, notably, he did not opine on the infringement issue in the litigation. Hynes takes a broad view of "lip osteophyte" for infringement while Drewry takes a narrow view for invalidity.

But nothing in RSB's argument even hinted that lip osteophytes varied from patient to patient, or that the percentage of the Fraser plate that fit between lip osteophytes depended on patient morphology. To the contrary, RSB argued—as a mathematical exercise based on this figure—that Fraser 106 did not meet this limitation because less than 50% of the base plate fit between what RSB labelled "anterior lip osteophytes." RSB expressly excluded any portion of the device that sat between the interior portion of the endplate, as well as any portion that extended into the posterior half of the endplate. And—based on these same illustrations—RSB prevailed.

Recognizing it has no evidence that the Accused Products meet this limitation, RSB attempts to manufacture new evidence. The effort fails. RSB first points to a figure from Hynes's report purporting to show the "approximate location" of alleged "lateral tabs" in some undefined "intervertebral device." (Opp. at 28.) From this figure, RSB creates a new image—not contained in any report—that purports to superimpose the accused Zero-P product on the image from Hynes's report. Both images are reproduced below, with the newly-created image on the right.

 

There are multiple problems with RSB's argument. First, it is not evidence. The image on the right was created by RSB's lawyers, and no witness (expert or otherwise) has testified about it. Second, the lawyers' image purports to show a Zero-P device on a lumbar vertebra, but Zero-P is used only on cervical vertebrae. Third, and perhaps more importantly, it does not show that the limitation is met under a proper understanding of the Court's claim construction.

If anything, this image demonstrates that the Zero-P plate is **_not_** placed "primarily" between lip osteophytes. An image (on the left below) superimposing RSB's own depiction of what is, and is not, a lip osteophyte over RSB's newly-created graphic illustrates the issue.



As can be seen, only a minor portion of the Zero-P plate would sit beneath the portion of the vertebra that RSB said constituted a lip osteophyte. This is seen even more clearly in the image on the right above, which DePuy created by superimposing an image of the Zero-P device taken from the surgical technique manual onto RSB's graphic illustrating the portions of the vertebra that are "anterior portions of lip osteophyte," and the "non-lip osteophyte portions" of the vertebra.

Finally, as discussed in DePuy's opening brief, Hynes testified that, in his opinion, the device depicted in Exhibit 29 would meet the limitation even if less than 50% of the plate was positioned between lip osteophytes. (D.I. 181 at 29.) RSB claims that DePuy's questioning was "vague," and complains that DePuy never asked Hynes about "lateral tabs" or whether his conclusion was based on an analysis using the plan or lateral views. (Opp. at 29.) RSB was, of course, free to ask any clarifying questions it felt were necessary and chose not to do so. More importantly, nothing RSB says now can avoid the fact that Hynes quite clearly did not apply the same test RSB (and its other expert, Drewry) advocated (and the PTAB adopted) in the IPR. There is no such evidence in his report.

### E.     RSB Cannot Prevail Under The Doctrine Of Equivalents For This Limitation

As stated in DePuy's opening brief, RSB's infringement theories are "insufficient as a matter of law." (D.I. 181 at 1.) This includes RSB's assertion that the lip osteophyte limitation is met under the doctrine of equivalents. Put simply, a device ***not*** placed primarily between lip osteophytes cannot be equivalent to a device that ***is*** placed primarily between lip osteophytes. (D.I. 189-2, Ex. 29 at ¶¶ 45-46, 89, 106, 130, 180, 214.) RSB seeks to vitiate the limitation, reading the term "osteophyte" out of the claim. This is wrong as a matter of law. *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) ("[A]n element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation" (citing *Warner–Jenkinson Co.,v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)); *see also Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998).

Moreover, as discussed at length above, and in DePuy's opening brief, RSB did not even attempt to introduce evidence that more than 50% of the base plate side surface is between lip osteophytes, literally or by equivalents. Nor could RSB make such an argument. In addition to directly contradicting its own winning arguments at the PTAB, "it would defy logic to conclude that a minority—the very antithesis of a majority—could be insubstantially different from a claim limitation requiring a majority, and no reasonable juror could find otherwise." *Moore U.S.A., Inc. v. Standard Reg. Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000).

## IV.     CONCLUSION

For all the foregoing reasons, the Court should enter summary judgment that (1) claims 9 and 12 of the '234 patent are anticipated by Michelson 376, and (2) the Asserted '537 Claims are not infringed.

ASHBY & GEDDES

*/s/ John G. Day*

Of Counsel:

Calvin P. Griffith
Patrick J. Norton
T. Kaitlin Crowder
Thomas S. Koglman
Olivia Pedersen
Robert M. Breetz
Kenneth S. Luchesi
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114
(216) 586-3939

Dated:  August 5, 2022

_____
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of August, 2022, the attached **DEPUY'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT** was served upon the below-named counsel of record at the address and in the manner indicated:

John C. Phillips, Jr., Esquire                    VIA ELECTRONIC MAIL
PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE  19806

Erik B. Milch, Esquire                             VIA ELECTRONIC MAIL
COOLEY LLP
11951 Freedom Drive
One Freedom Square
Reston, VA  20190-5656

Frank V. Pietrantonio, Esquire                     VIA ELECTRONIC MAIL
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004

Joseph M. Drayton, Esquire                         VIA ELECTRONIC MAIL
COOLEY LLP
55 Hudson Yards
New York, NY  10001

Rose S. Whelan, Esquire                            VIA ELECTRONIC MAIL
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC  20004

Reuben Chen, Esquire                               VIA ELECTRONIC MAIL
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130


*/s/ John G. Day*
John G. Day