IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RSB SPINE, LLC,<br><br>　　　　Plaintiff<br><br>v.<br><br>DEPUY SYNTHES SALES, INC., and<br>DEPUY SYNTHES PRODUCTS, INC,<br><br>　　　　Defendants. | Civil Action No. 19-1515-RGA |

<u>MEMORANDUM ORDER ON PARTIES' MOTIONS TO EXCLUDE EXPERT TESTIMONY</u>

Before me are Defendants' *Daubert* Motion to Exclude Certain Opinions and Testimony of Damages Expert Douglas Kidder (D.I. 171) and Plaintiff's *Daubert* Motion to Exclude Expert Opinions. (D.I. 176). I have considered the parties' briefing on each motion (D.I. 172, 190, 201; D.I. 177, 186, 198). For the reasons set forth below, Defendants' motion is DENIED, and Plaintiff's motion is DENIED.

## I.  BACKGROUND

Plaintiff RSB Spine ("RSB") asserts two patents against Defendants DePuy Synthes Sales and DePuy Synthes Products (collectively, "DePuy"). These patents concern spinal implant devices used in spinal fusion surgeries. (D.I. 172 at 2). DePuy asserts counterclaims of invalidity and non-infringement, and, in the alternative, interference between one of DePuy's own patents and the asserted patents. (D.I. 41). RSB is not seeking lost profits. (D.I. 173 Ex. A at 17).

## II.  LEGAL STANDARD

Federal Rule of Evidence 702 sets out the requirements for expert witness testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Third Circuit has explained:

> [T]he district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury. *See Daubert* ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) [of the Federal Rules of Evidence] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404–05 (3d Cir. 2003) (footnote and internal citations omitted).[1] Qualification examines the expert's specialized knowledge, reliability examines the grounds for the expert's opinion, and fit examines whether the testimony is relevant and will "assist the trier of fact." *Id.* at 404.

## III. DISCUSSION

### A. Defendants' Motion to Exclude Opinions and Testimony

Defendants move to exclude opinions by Plaintiff's damages expert, Mr. Douglas Kidder, on two grounds. First, Defendants argue that Mr. Kidder failed to apportion his reasonable royalty calculation. (D.I. 172 at 6). Second, Defendants contend that Mr. Kidder did not account for the negotiation aspect of a hypothetical negotiation in determining the reasonable royalty. (*Id.* at 12-13). I find that Mr. Kidder's opinion sufficiently addresses apportionment and negotiation.

---

[1] The Court of Appeals wrote under an earlier version of Rule 702, but the subsequent amendments to it were not intended to make any substantive change.

Defendants' objections to his conclusions only raise factual issues that can be addressed by cross examination.

### 1. Failure to Apportion

Mr. Kidder calculated his proposed reasonable royalty based on the first *Georgia-Pacific* factor, "royalties received by the patentee for the licensing of the patent in suit." *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). He examined agreements (the "License Agreements") between Plaintiff and three other spinal implant companies (the "Licensees"). (D.I. 173 Ex. A ¶ 58). Two agreements (with Xtant and Life Spine) settled litigation over the same patents asserted here, while the third (with Zimmer) alludes to a dispute but no lawsuit. *Id.* ¶¶ 74, 82, 87. Those agreements provided for "headline" royalty rates of 5% or 6%, reduced by additional licensee-specific discounts. Mr. Kidder finds that since DePuy would not qualify for the discounts offered to the Licensees, 6% would be a reasonable royalty. *Id.* ¶ 58.

DePuy argues that Mr. Kidder failed to apportion this reasonable royalty in two ways: first, by not explicitly valuing the asserted patents relative to DePuy's own contribution to its products, and second, by not accounting for the fact that license agreements upon which he based his rates include other patents. (D.I. 172 at 6). Plaintiff argues that apportionment is properly "built in" to the 6% rate, since the License Agreements concern the same patents and similar products. (D.I. 190 at 2). Plaintiff also notes that while the License Agreements do include other patents, Mr. Kidder considered these patents and determined that their inclusion did not affect the agreed-upon rates. (D.I. 190 at 8).

The "ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201,

1226 (Fed. Cir. 2014). The Federal Circuit has instructed that district courts, as gatekeepers, should "ensure that only theories comporting with settled principles of apportionment [are] allowed to reach the jury." *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014). When, as here, an expert "[relies] on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *Laser Dynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). However, "the degree of comparability of the . . . license agreements as well as any failure . . . to control for certain variables are factual issues best addressed by cross examination and not by exclusion." *ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012).

Both Defendants and Plaintiff cite *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, 2018 WL 4691047 (D. Del. Sept. 28, 2018), in which I found that a separate apportionment analysis would not always be necessary, but that one of the experts had nonetheless failed to sufficiently apportion the royalty. Specifically, there would need to be "a logical basis" for not conducting an apportionment analysis. *Id.* at *7. The expert in that case later did provide a sufficient logical basis. *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, 2018 WL 5729732, at *2 (D. Del. Nov. 2, 2018), *aff'd in relevant part*, 967 F.3d 1353, 1372-77 (Fed. Cir. 2020).

Mr. Kidder has clearly stated why the licenses are comparable: RSB had asserted the same patents against two of the Licensees, the licenses are also for spinal implant products, and the Licensees are Defendants' competitors. (D.I. 190 at 2, 5). This is in contrast with *Bio-Rad*, where there was reason to think that the patented technology did not play the same role in the licensed products as in the accused products. *Bio-Rad*, 2018 WL 4691047 at *8 n. 3. Mr. Kidder also addresses the additional licensed patents and provides reasoning for why he does not think they impact his overall calculation. (D.I. 173 Ex. A ¶ 96). Further exploration of the similarities

or differences between Defendants and Licensees is a factual, rather than methodological, exercise and can be addressed on cross examination.

### 2. Hypothetical Negotiation

Defendants argue that Mr. Kidder's arrived-at rate is simply where RSB would have started its hypothetical negotiation, and that Mr. Kidder thus "improperly assumed a one-sided negotiation." *In re Koninklijke Philips Patent Litig.*, 2020 WL 7398647, at *9 (N.D. Cal. Apr. 13, 2020). Plaintiff counters that Mr. Kidder compared DePuy's negotiating position to those of the licensees and concluded that they were "similarly situated." (D.I. 173 Ex. A at 50). He also observed that DePuy would not qualify for any of the discounts granted to the licensees. (D.I. 190 at 8-9).

I agree with Plaintiff. The expert in *In re Koninklijke Philips* used advertised licensing rates, which would clearly be one-sided and not negotiated. 2020 WL 7398647 at *9. The headline rates from RSB's License Agreements, although not final paid rates, are nevertheless the product of negotiation. The fact that the Xtant agreement has a lower rate than the Life Spine and Zimmer agreements supports this. (D.I. 173 Ex. A at 29 Table 6). Mr. Kidder reasonably asserts that DePuy has a similar baseline bargaining power to the Licensees, but without any of the advantages that would lead to further discounts. A factual question may well exist as to whether DePuy truly would not have qualified for some additional discount, but, again, such a factual issue should be addressed on cross examination.

### B. Plaintiff's Motion to Exclude Expert Opinions

Plaintiff moves to exclude certain opinions of Defendants' technical expert, Dr. Boyle C. Cheng, as well as those opinions of Defendants' damages expert, Mr. Kevin McElroy, that are derived from Dr. Cheng's opinions. Plaintiff argues that Dr. Cheng offers opinions regarding the

term "lip osteophyte" that contradict the court's claim construction, and that Dr. Cheng presents certain of Defendants' products as "non-infringing alternatives" without sufficient proof. Mr. McElroy references these products in his reasonable royalty analysis.

First, I find that Dr. Cheng's usage of "lip osteophyte" is permitted by my claim construction. Second, I find that because Plaintiff is not seeking lost profits, Dr. Cheng provides sufficient support for his identification of DePuy's products as alternatives to the accused products.

### 1. Opinions Regarding "lip osteophytes"

I construed "lip osteophyte" to mean "bony outgrowth at the lip." (D.I. 123 at 9). Dr. Cheng employs my construction in his Non-Infringement Report, responding to Plaintiff's expert Dr. Hynes's Infringement Report. In his report, Dr. Cheng asserts that each of Defendants' devices "does not include a bone screw hole that opens toward a lip osteophyte" because lip osteophytes "would be located on the outer surface of the bone." (D.I. 178 Ex. K ¶¶ 87, 114, 164, 197, 230).

Plaintiff argues that by insisting an osteophyte must be "on the outer surface," Dr. Cheng is narrowing my construction. (D.I. 177 at 37). According to Plaintiff, a requirement that the osteophyte be "on the outer surface" would prevent the osteophyte from "shar[ing] or includ[ing] a portion of the two-dimensional side surface"—an attribute I specifically allowed for in construing the term. (D.I. 123 at 10). Defendants argue that Dr. Cheng's usage follows naturally from the definition of the vertebral "lip," and that an osteophyte must grow outward since it is construed to be an "outgrowth." (D.I. 186 at 34-35).

Expert testimony that contradicts the Court's claim construction should be excluded. *Minerva Surgical, Inc. v. Hologic, Inc.*, 2021 WL 3048447, at *9 (D. Del. July 20, 2021).

However, as Plaintiff itself notes in its response to Defendants' Motion for Summary Judgment (D.I. 190 at 19), experts disagreeing about how a construction should be applied to a given case is a factual dispute for the jury. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301-02 (Fed. Cir. 2011). Here, Dr. Cheng seems to use my construction properly. Differences between his usage and Plaintiff's expert's usage amount to disagreements about what a person of ordinary skill would consider to be the vertebral "lip," and how outgrowths from that area could be shaped. These are factual disputes.

### 2. Opinions Regarding Non-Infringing Alternatives

Dr. Cheng opines that some of Defendants' other products would have served as alternatives to the accused products. (D.I. 178 Ex. K ¶¶ 245-52). Mr. McElroy then refers to the impact these products would have had on a hypothetical negotiation between the parties in his rebuttal to Mr. Kidder's report. (D.I. 178 Ex. M ¶¶ 16, 74, 137, 151, 162 n. 234).

Plaintiff argues that *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341 (Fed. Cir. 1999), requires Defendants to meet a particular burden of proof when asserting that a product is a non-infringing alternative. (D.I. 177 at 38). Defendants point out that, as Plaintiff is not seeking lost profits, no such burden is applicable. (D.I. 186 at 37).

I agree with Defendants. *Grain Processing* concerns whether a court properly denied a plaintiff lost profits. 185 F.3d at 1343. Plaintiff cites no case law that indicates any burden of proof when considering alternative products for a reasonable royalty analysis under the *Georgia-Pacific* factors. The existence of alternative products may affect some of the fifteen factors, but the entire possibility of an award does not turn on the alternative's existence. Plaintiff may certainly cross-examine both Dr. Cheng and Mr. McElroy on the strength of their factual

findings that DePuy's other products would have influenced the royalty negotiations, but I see no reason to exclude Dr. Cheng's opinions.

    IT IS SO ORDERED.

Entered this 18th day of November, 2022

/s/ Richard G. Andrews
United States District Judge