# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RSB SPINE, LLC,

               Plaintiff,

      v.

DEPUY SYNTHES SALES, INC., and
DEPUY SYNTHES PRODUCTS, INC.,

            Defendants.

C.A. No. 1:19-1515-RGA

## DEPUY'S RESPONSE TO RSB'S RULE 52(c) MOTION OF NO <u>INTERFERENCE-IN-FACT</u>

RSB's Rule 52(c) motion (D.I. 371) should be denied. DePuy amply demonstrated the presence of an interference-in-fact in its case-in-chief, and confirmed it via its cross-examination of RSB's witnesses. RSB's motion relies on the same semantic word games that its lawyers utilized with its witnesses (and its witnesses relied on in their own testimony). The evidence of record demonstrates that Claim 17 of the '207 patent and Claims 10 and 14 of the '537 patent claim obvious variations of the same invention—just claimed in different words. For that reason, the two-way test is satisfied, an interference-in-fact should be declared, and RSB's motion should be denied.

## GOVERNING LAW

1.    **The Rule 52(c) Standard.** Fed. R. Civ. P. 52(c), titled "Judgment on Partial Findings," provides:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

The Rule's objective is to "conserve[] time and resources by making it unnecessary for the court to hear evidence on additional facts when the result would not be different even if those additional facts were established." 9 James Wm. Moore et al., Moore's Federal Practice, § 52.50[2] (3d ed. 2010). Under the Rule, "the district court applies the same standard of proof and weighs the evidence as it would at the conclusion of the trial … does not view the evidence through a particular lens or draw inferences favorable to either party," and "should also make determinations of witness credibility where appropriate." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 272-73 (3d Cir. 2010). "Finally, if the court enters judgment under Rule 52(c), it must make findings of fact and conclusions of law pursuant to Rule 52(a)." *Id.*

The Court has already exercised its discretion to "decline to render any judgment until the close of evidence," Fed. R. Civ. P. 52(c), so as a practical matter, RSB's motion can be treated as a request for findings and conclusions after a full bench trial.

**2.      The Two-Way Test For Interference-In-Fact.**  As DePuy explained in its briefing regarding the role of inventor testimony in interferences (D.I. 355), interfering patents claim "the same or substantially the same subject matter." *Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1263 (Fed. Cir. 2002).  Thus, the first step in an interference is determining whether the patents do, in fact, interfere by claiming the same (or substantially the same) subject matter. *Genetics Inst., LLC v. Novartis Vaccines and Diagnostics, Inc.*, 655 F.3d 1291, 1302 (Fed. Cir. 2011).  Interference-in-fact is governed by a two-way obviousness test. *Id.*  Under the two-way test, each patent is treated as prior art to the other, and the Court determines whether the allegedly interfering claim(s) of one patent, in combination with the prior art, renders the claim(s) of the other patent obvious, and vice versa. *Id.* (citing 37 C.F.R. § 41.203(a)); *see also Eli Lilly & Co. v. Bd. of Regents of Univ. of Wash.*, 334 F.3d 1264, 1268 (Fed. Cir. 2003).

Each direction of the two-way test employs a standard obviousness analysis under 35 U.S.C. § 103.  *Genetics Inst.*, 655 F.3d at 1302 ("[T]he standards of review for an interference in fact mirror those of anticipation and obviousness."); *see also Regents of Univ. of Calif. v. Broad Inst.*, 903 F.3d 1286, 1291 (Fed. Cir. 2018) ("When an interference-in-fact turns on whether one set of claims renders obvious the subject matter of another set of claims, the standard of review mirrors that in an obviousness review.").  In interferences, then, "[o]bviousness is a question of law based on underlying facts." *Broad Inst.*, 903 F.3d at 1291.

Contrary to RSB's claim (D.I. 371 at 2) that "[t]he specification is not relevant," the specification of the allegedly interfering patents is quite relevant to the two-way test.  In *Advance*

*Transformer*—the case RSB repeatedly cites to argue that the specification is "irrelevant"—the Federal Circuit held just the opposite. "As a guide to determining whether the claimed subject matter is the same, the district court did not err in determining whether the claims 'cross-read' on the disclosure of the other's patent, and thus whether each patentee could have made, based on his own disclosure, the claims that were granted to the other." *Advance Transformer Co. v. Levinson*, 837 F.2d 1081, 1084 (Fed. Cir. 1988). *See also Wang v. Aziz*, Interference No. 105,691 (Paper 23) at 10-11 (B.P.A.I. 2010) (specification may be used in an interference for "providing context and explanation for the claims") (citing *Noelle v. Lederman*, 355 F.3d 1343, 1347 (Fed. Cir. 2004).)

## ARGUMENT

As DePuy showed in its opening remarks, the one real difference between the claims of RSB's '537 patent and the Lechmann '207 patent is the pair of "lip osteophyte" limitations. Those limitations were added by amendment (and argued to the PTAB) to secure patentability over prior art. The jury in the infringement trial found that DePuy's accused products did not literally satisfy these limitations, but did meet them under the doctrine of equivalents, which requires that an element in an accused product be only "insubstantially different" from what is claimed in order to infringe under that doctrine. (Subject, of course, to certain legal limitations of that doctrine, which will be the subject of briefing in the future.)

This is what DePuy meant when it said that RSB has reaped the interference that it sowed through its infringement-by-equivalents verdict: Because RSB prevailed at the infringement trial by arguing through its expert, Hynes, that "you still do the same thing whether it's a lip osteophyte or not" (Dec. 2022 Trial Tr. at 247:25 (Hynes)), and that "it's [the accused product] put there exactly the same way, whether there is a lip osteophyte there or not" (*id.* at 248:18), the once-all-important lip-osteophyte limitations are now being completely ignored by RSB. Its Rule 52(c)

motion (D.I. 371) makes no mention of the lip-osteophyte limitations, and RSB is left to argue that semantic distinctions between the two patents—not the one, real difference that earned RSB its patent before the Patent Office—are what prevent the two-way obviousness test from being satisfied.

As DePuy shows below, none of the differences that RSB has alleged are real, inventive differences between the two patents. Not only does that compel denial of RSB's Rule 52(c) motion; it also compels this Court declaring an interference-in-fact.

1.    **RSB's "Best" Argument—"Three-Dimensional Body With Teeth And Partial Boreholes."** The Court noted that "RSB has raised six issues as to why the two-way test has not been proven," and asked RSB's counsel "to tell me exactly which one of the six is your best argument." Rough Tr. at 230:12-15. RSB's counsel actually raised not just one, but three of the six in his answer, saying that DePuy has "not demonstrated" that a POSA could modify the claims of the '537 patent to make "a three-dimensional body with teeth and partial boreholes." Rough Tr. at 232:25-233:1. (RSB treats these as two, not three, distinct arguments in its Rule 52(c) motion. (D.I. 371 at 3-4).)

Even RSB's "best" argument is without merit. It starts by knocking down a strawman argument that DePuy is not making (that Fraser '222 discloses the "three-dimensional body" limitation), and then admits—admits—that Dr. Cheng showed that Fig. 3 of the '537 patent's specification shows a bone graft 12 (a "three-dimensional body") with "partial boreholes," and that a POSA would have been motivated to add teeth to that bone graft. (D.I. 371 at 3.) RSB instead trumpets its cross-examination as having undermined Dr. Cheng's testimony.

That claim is unavailing. Dr. Cheng testified that a partial borehole would be necessary to "accommodate" the bone screw shown in Figure 3 of the '537 patent. *See* Rough Tr. 91:3–92:1

- 4 -

("In order to accommodate that bone screw I have highlighted . . . a partial borehole.  That is in order to accommodate that bone screwing coming out."); Rough Tr. 91:18–92:1 ("So again, back to Figure 3 here. . . . So in this cross sectional view it's highlighted in red but that, in fact, could be a partial borehole.").  This is consistent with Dr. Cheng's opinion at his deposition regarding Fig. 22.  Cheng Dep. Tr. at 406:12–24 ("The borehole is partially – it is a partial borehole, and you can see the cut-out for that partial borehole in the side of the implant.").  RSB's arguments about Dr. Cheng's deposition testimony are undermined by Dr. Cheng's testimony that he simply did not see specific call-outs, or numbers, for partial boreholes.  *See* Rough Tr. 129:3–7, 129:20–25 (explaining that his deposition testimony was "talking about callout for the boreholes.  And there's no call out for the boreholes."); Cheng Dep. Tr. at 313:21–24 ("In '537, Figure 3, call-out 12, I did not see mention of boreholes.").  Dr. Cheng has never testified that the '537 patent lacked partial boreholes or that it would be nonobvious for the '537 patent to include them.

Regarding teeth, Mr. Lechmann testified at significant length that teeth had been employed since at least 1999; they were a "familiar element" that Mr. Lechmann applied "according to known methods" to achieve "predictable results."  *E.g.*, Rough Tr. 2:11–24, 23:4–19; 35:4–6; *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007).  He testified that teeth were used for "two purposes.  The first purpose is to avoid migrations, so we expect that the pyramids – the teeth sink in a little bit and avoid the spacer or cage from moving around.  The second purpose is it just scratch [sic] the bony surface to allow some blood flow to be collected with the bone substitute material for a later solid bone graft."  Rough Tr. at 23:4–24:2.  This helped to fuse the vertebrae. *Id.*

Dr. Cheng and DePuy have shown that the "bone graft material" disclosed in Claims 10 and 14 of the '537 patent is a three-dimensional body, that teeth are well known and obvious, that

there are partial boreholes in the bone graft, and that a POSA would incorporate teeth into Claims 10 and 14, *inter alia,* to "scratch the bony surface to allow some blood flow to be collected with the bone substitute material for a later solid bone graft." Rough Tr. 23:17-19. This reason for combining teeth into the bone graft material with partial boreholes would not be "duplicative" of the "lateral tabs" of Claim 10 of the '537 patent, as RSB suggests (D.I. 371 at 3-4)—those lateral tabs have nothing to do with scratching the surface to encourage blood flow. And, as noted above, it is not "legally impermissible" (*cf.* D.I. 371 at 4) for a POSA to look to the specification to inform himself about the scope or content of a patent claim. RSB's "best" argument wilts upon analysis.

  **2. RSB's Other Arguments Fare No Better.** Having combined all of its arguments against the obviousness of Claim 17 of the '207 patent to create its singular "best" argument, what is left are RSB's three arguments against the obviousness of Claims 10 and 14 of the '537 patent. None of these suffice to defeat the interference-in-fact, either.

  **a. The "Front Plate" Of The '207 Patent Satisfies The "Bear Weight" Limitation Of The '537 Patent.** Here, RSB is doing exactly what DePuy told the Court RSB would do—arguing about what the "front plate" of the '207 patent's claims was subjectively intended to do, rather than what it objectively is and does. (D.I. 371 at 1) ("All DePuy's witnesses acknowledge that the '207 patent's specification identifies that the claimed 'front plate' is intended not to bear weight."). Here, RSB relies on this single sentence located at column 2, lines 30-32 of the '207 patent: "The load is still absorbed under compression by the intervertebral implant and not by the front plate or the fixation screws (longitudinal fixation elements)." The testimony established that this sentence should be understood in the context of the preceding sentences to be a comparison ("the load is still absorbed") to the compressive load-bearing characteristics of prior art, two-part devices which bore a majority of compressive load

in the intervertebral spacer and a small amount in the plate.  Rough Tr. 38:3-39:19.  Mr. Lechmann testified that this sentence does *not* "mean[] the '207 invention cage bears 100 percent of the compressive load."  Rough Tr. 38:23-39:1.  Witnesses at the hearing further testified, or admitted, that the front plate of the '207 patent necessarily "bear[s] weight to hold the vertebral bones while sharing weight with bone graft material for fusion," as required by the claims of the '537 patent.  Rough Tr. 39:2–11 ("So there's always a portion of, even it's [sic] minimum, of compression loads through such a plate-and-screw construct."); 40:13–15 ("Q: And the question to you is:  Does the front plate in your inventive design bear at least some weight?  A:  It does.  Minority of weight."); 67:6–21 ("By laws of physics, we know that screw rigidly fixed in the front plate would bear weight would not have – be able to describe how it wouldn't be able to bear weight based on that connection.").

Particularly when viewed through the lens of this Court's claim-construction order, which rejected RSB's efforts to make this single sentence into a disclaimer (D.I. 328 at 8-10) or otherwise limit the scope of the '207 patent (*id.* at 17), RSB's arguments with respect to the subjective intent of the front plate ring hollow and lack merit.

**b.**    **The '207 Patent Combined With Shepard Discloses The "Lateral Tabs" Of Claim 10 Of The '537 Patent.**  Here again, RSB leans on semantics over substance.  RSB notes (correctly) that Dr. Cheng did not testify that the front plate of the '207 patent possessed "lateral tabs," D.I. 371 at 1, but argues (a) that Dr. Cheng admitted that the projections of Figs. 14 and 15 of Shepard "do not extend from opposite ends of a bottom surface of a base plate," (b) that DePuy failed to show a motivation to combine Shepard's tabs with the '207 patent's base plate, and (c) that the '207 patent actually teaches away from such a combination.  D.I. 371 at 1-2.  Each argument fails.

- 7 -

*First*, Dr. Cheng testified that lateral placement of tabs (as disclosed by Shepard) with "one on the right and one on the left, those would be opposite ends, that would be an example where opposite ends could be." Rough Tr. 112:16–21. This is not controversial—RSB's expert agreed. Rough Tr. 225:17–20 ("Q: But my point is that [Shepard] has two lateral tabs on the body; right, even what you would consider to be lateral tabs at opposite ends? Q: I guess you could call it that."). All that RSB has to offer to the contrary is attorney argument.

*Second*, Dr. Cheng testified that a POSA would be motivated to modify the '207 patent to include lateral tabs because "[t]hey provide additional security and they would limit the amount of migration and potential expulsion. Those are all known reasons why to incorporate and mount that front plate to the body." Rough Tr. 71: 10–16. He also testified that a POSA would have had a reasonable expectation of success in doing so. Rough Tr. 71:17–21.

*Third*, "teaching away" is RSB's burden, not DePuy's. *Meiresonne v. Google, Inc.*, 849 F.3d 1379, 1382-83 (Fed. Cir. 2017); *DePuy Spine, Inc. v. Medtronic Somafor Danek, Inc.*, 567 F.3d 1314, 1326-28 (Fed. Cir. 2009). And RSB offered no "teaching away" testimony on this limitation at the hearing. This undeveloped argument is strictly attorney argument unsupported by any testimony or positive evidence.

**c.    The '207 Patent, Alone And In View Of Prior Art, Discloses And Renders Obvious The "Bone Engaging Region" Limitation Of The '537 Patent.** Here again, RSB overplays the unexceptional proposition that an interference-in-fact is between claims, and urges that "[t]he specification is not relevant." (D.I. 371 at 2.) Dr. Cheng testified at length (over numerous objections by RSB for which the Court charged trial time) that the '207 patent— including the claim—disclosed the "bone engaging region." Rough Tr. 78:19–79:6 ("Claim 17 in '207 recite boreholes. Boreholes are complete boreholes and by default they have material

above them, they would have material below them in this particular configuration.  So the fact that they're defined as boreholes gives them continued uninterrupted bone-engaging region.").

RSB's own witnesses destroyed its case on this issue.  RSB's expert Mr. Drewry was forced to admit on the stand—despite RSB's counsel's efforts to keep DePuy from examining him on the subject (Rough Tr. 212:11-214:11)—that Michelson '345 has a "base plate portion [with] uninterrupted bone-engaging first and second ends."  Rough Tr. 214:5-7; *see id.* at 214:8 ("Yes, sir, it does.").  Mr. Drewry even admitted that "[t]hat was something that was known in the art."  *Id.* at 214:9.

## CONCLUSION

RSB's Rule 52(c) motion should be denied.  An interference-in-fact should be declared.

*Of Counsel:*

Calvin P. Griffith
Patrick J. Norton
Thomas S. Koglman
T. Kaitlin Crowder
Jesse T. Wynn
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114
(216) 586-3939
cpgriffith@jonesday.com
pjnorton@jonesday.com
tkoglman@jonesday.com
kcrowder@jonesday.com
jwynn@jonesday.com

Timothy J. Heverin
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
(312) 782-3939
theverin@jonesday.com

Dated:  April 8, 2025

ASHBY & GEDDES

*/s/ John G. Day*

_____
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendants*